## WILLIAM ELTING *vs.* JOHN D. STURTEVANT.

The plaintiff sued for services in purchasing a mill for the defendant. He was not a real estate broker, and no agreement had been made as to the amount of his compensation. Held that, upon the enquiry as to what his services were reasonably worth, the evidence of a real estate broker as to the commission that he charged for such a service and as to what he would have charged in the case in question, was admissible.

Before the suit was brought the defendant called on the plaintiff and informed him that he wanted to settle with him for his services in purchasing the mill, and asked him to state what he should pay him. The plaintiff declined to state any sum. The defendant thereupon paid him $100, and the plaintiff wrote and delivered to him the following receipt :—" Received of *S* $100 commission on purchase of mill, *W. E.*" Held that in the absence of proof to the contrary, it was to be regarded as a receipt in full.

Where the language of such an instrument is ambiguous, it should be construed as understood by the party taking it, especially if the circumstances will justify the inference that the other party knew that he so understood it.

GENERAL ASSUMPSIT for work and labor, brought to the Superior Court in the County of New London, and tried on the general issue, with notice, closed to the court, before *Foster, J.*

The bill of particulars filed by the plaintiff was as follows:

" 1863, June.   To commission for purchase of Stone
            Mill, and service for starting the same, and
            advice with A. P. Sturtevant,          $1,250.00
                        Cr.
"   July 2.  By cash on account of commission for
            purchase of mill,                    $100.00
                                            ———————————
                                              $1,150.00"

On the trial the plaintiff sought to recover a commission of twelve hundred and fifty dollars for purchasing of one Loomis, for and at the request of the defendant, a woolen mill known as the Stone Mill, situated on the river Yantic in the town of Norwich, and services for starting the mill and advising with A. P. Sturtevant on behalf of the defendant.

It appeared from the evidence that in the month of Decem-

ber, 1862, the plaintiff was employed by the defendant to negotiate with Loomis for the purchase of the mill, provided he could get it for a sum not exceeding $25,000; that soon afterwards the plaintiff entered into negotiations with Loomis or the purchase, and after spending some time in the negotiations, obtained from him a bond for a deed of the property upon the payment of $25,000, in consideration of which the plaintiff executed and delivered to Loomis a contract binding himself to take a deed of the property and to pay him that sum therefor; and that afterwards, on the 28th of December, 1862, he assigned the bond and all his interest in the contract to the defendant. There was no express agreement between the parties as to the compensation which should be paid the plaintiff for the service; it was the understanding that it should be what was usual and reasonable in such cases, and the defendant told the plaintiff that if he succeeded in purchasing the mill he would lower the dam six inches. The plaintiff was anxious that the dam should be so lowered, because he thought the mill next above on the same stream, in which he was largely interested, would be thereby relieved of back water and greatly improved in value.

No services were rendered by the plaintiff in starting the mill or in advising with A. P. Sturtevant, as charged in his bill of particulars.

The plaintiff was not a real estate broker, and was not employed by, and did not render any services for the defendant as such, but as a skillful person to make the purchase. For the purpose of proving what his services in purchasing the mill were reasonably worth, the plaintiff introduced, as a witness, Jonathan W. Hooker, a real estate broker, residing in the city of Norwich, who testified that his charge for buying real estate outside of the city limits was two and a half per cent. of the purchase price; that he should have charged the defendant that commission if he had been employed to make the purchase in this case; and that the time spent in performing the service made no difference in his charges, and that it was not customary for him to take it in consideration.

To this testimony the defendant objected, but the court admitted it.

On the 2d day of July, 1863, A. P. Sturtevant, acting in behalf and at the request of the defendant, saw the plaintiff, and informed him that he wanted to settle with him for his services in purchasing the mill, and requested him to name the sum which he should pay him for that purpose. The plaintiff declined to name any sum; and thereupon Sturtevant paid the plaintiff $100 in a check of the Norwich Woolen Company, who were then the owners of the mill. The plaintiff, upon receiving the check, wrote and executed the following receipt and delivered the same to Sturtevant:

<blockquote>
"Norwich, July 2d, 1863.

"Received from the Norwich Woolen Company one hundred dollars commission on purchase of mill.

"$100.          WILLIAM ELTING."
</blockquote>

The defendant claimed that this receipt was a receipt in full of the plaintiff's commission for purchasing the mill, and requested the court so to rule. The plaintiff claimed that it was not given as a receipt in full, but on account only. The court held that the plaintiff was not precluded by the receipt from recovering what his services were reasonably worth; and found from the evidence that they were worth $625, and accordingly rendered judgment for that sum, less the $100 paid.

The defendant moved for a new trial for error in the rulings of the court with regard to the evidence objected to and with regard to the receipt.

*Hovey* and *Lucas*, in support of the motion.

1. The testimony of Hooker was not admissible. He was a real estate broker. His business was to buy and sell lands for others, and by an act of Congress in force at the time the services were rendered, he was styled a "Commercial Broker." *Brightley's Dig., Supp.*, 1367. As such he charged his principals a commission of two and a half per cent. on the amount of all purchases made by him, of real estate situate

beyond the limits of the city of Norwich, without regard to the time spent or the labor performed in transacting the business. But his right so to do, in the absence of an express agreement, depended upon the custom or usage of trade. 1 Am. Lead. Cases, 2d ed., 721, and the cases there cited. Story on Agency, § 326.

If no such custom or usage existed, he was entitled to such compensation as his services were reasonably worth, and no more. The plaintiff, on the other hand, was not a real estate or commercial broker, and was not, and, under the laws of the United States, could not be, employed by the defendant as such. He was a private agent employed (in the language of the motion) "as a skillful person to make the purchase," but without any agreement with the defendant as to the compensation he was to be paid for his services, except the one implied by law. He was not, therefore, entitled to the commission allowed by the usage of trade to a real estate or commercial broker, but to such compensation only as his services were reasonably worth. Chitty on Cont., (7th Am. ed.) 547 and note 2.

2. The receipt given by the plaintiff and recited in the motion, should have been construed to be a receipt in full. *Fuller* v. *Crittenden,* 9 Conn., 401; Remarks of HINMAN J. in *Chapin* v. *Persse & Brooks Paper Works,* 30 id., 475. The circumstances connected with the giving of the receipt show that it was intended to be a receipt in full. The language used also discloses the same intention, and the receipt, having been drawn by the plaintiff, should have been taken most strongly against him and most favorably for the defendant. And if the language in which it was drawn rendered it doubtful whether it was intended to be a receipt in full, or only of one hundred dollars on account, the defendant had a right to treat it as a receipt in full, and to insist that it should be so construed by the court. Chitty on Cont. (7th Am. ed.), 95; Broom's Legal Maxims, 254.

*Wait* and *Pratt,* contra.

1. The evidence of Hooker was admissible. There was no

express agreement between the parties as to the compensation for the services performed. The plaintiff was to be paid what his services were reasonably worth. He was not a real estate broker, and was not employed strictly as such by the defendant, but as a *skillful person* to make the negotiations. Evidence of what the compensation would be of a person whose business it would be to make such negotiations, is certainly admissible. It would certainly tend to prove what such services were worth; and, whether they were worth more or less, or the same sum, would depend upon their value and extent. Whatever tends to prove the facts in issue, is admissible. To hold that the testimony of a person whose business it was to make such negotiations, as to his rates of charges for like services, was not admissible, would seem to exclude all evidence upon the point. 1 Swift's Dig., 768 ; *Belden* v. *Lamb*, 17 Conn., 441 ; *Occum Co.* v. *Sprague Manuf. Co.*, 34 id., 530, 538.

2. The receipt was not a receipt in full between the plaintiff and defendant. On its face it purported to be from the " Norwich Woolen Company" to the plaintiff. It was necessary for the defendant to prove extrinsically that it was intended as a receipt between the plaintiff and defendant. The plaintiff was then at liberty to prove, on his part, the purpose for which it was given. Whether or not it was a receipt in full for the services rendered, then became a question of fact on which the court passed as matter of fact, and by the judgment finds that it was not a receipt in full. The ruling of the court on this point was correct. *Fuller* v. *Crittenden*, 9 Conn., 401 ; *Wooster* v. *Butler*, 13 id., 309 ; *Bishop* v. *Perkins*, 19 id., 300 ; 1 Swift's Dig., 303.

CARPENTER, J. This record presents two questions for our consideration.

1. Was the testimony of Mr. Hooker admissible ? The point to be proved was the value of the plaintiff's services in purchasing a mill for the defendant. The testimony of Mr. Hooker, who was a real estate broker, proved what his charges would have been for the same services. It was not

offered as fixing the rule of damages, but as tending to prove the point in issue, and for that purpose we think it was properly received. The price ordinarily charged for such services by persons engaged in that business might well be considered by the court in determining what the plaintiff's services were reasonably worth.

2. Sometime after the purchase the plaintiff received for his services the sum of one hundred dollars, and gave therefor the following receipt:—

"Norwich, July 2d, 1863.

"Received from the Norwich Woolen Company one hundred dollars commission on purchase of mill.

William Elting."

The defendant claimed that this receipt was a receipt in full of the plaintiff's commission for purchasing the mill, and requested the court so to rule. The plaintiff claimed that it was not given as a receipt in full, but on account only. The defendant's claim involved a question of law, and was in effect a request that the court would declare the legal effect of the receipt. The plaintiff's claim seems to involve a question of fact merely. There is perhaps a little uncertainty as to what the plaintiff meant, and how it was regarded by the court below. If it is to be understood as a request that the court would *find as a fact* that the parties, at the time the money was paid and the receipt given, understood and intended it as a payment on account only, that presents a pure question of fact, and the finding of the court upon that point, assuming that evidence as to the intention was admissible, would be conclusive. We think it cannot properly be regarded in that light for two reasons; first, there is no express finding to that effect, and none can be implied because the motion will admit of another construction; secondly, the plaintiff's claim, as thus understood, would not be responsive to the claim of the defendant. But if we regard it as a request that the court would hold that the legal effect of the receipt was not a receipt in full but a receipt in part only, it explains the absence of any finding as to the intention and

understanding of the parties, is responsive to the claim of the defendant, and makes the action of the court responsive to the claims of both parties. For the motion, after stating the claims of the parties, states the action of the court thus :—"The court held that the plaintiff was not precluded by said receipt from recovering what his services were reasonably worth." This is apt and appropriate language to express the ruling of the court upon a question of law, and inappropriate when applied to a question of fact. This construction of the motion makes it intelligible, and consistent with itself.

The question then is, whether the court was right in construing the receipt as a receipt on account and not a receipt in full.

If it was clear that the parties understood the transaction alike and intended by it one and the same thing, the duty of the court would be equally clear. But the difficulty is that there is reason to believe that the party receiving the money and giving the receipt understood it in one way, and the party paying the money and taking the receipt understood it in another. In such a case, the language being ambiguous, we ought to construe it as understood by the party taking it, especially if the circumstances will justify the inference that the other party knew that he so understood it.

The receipt is not expressed to be " in full," nor " on account." It will admit of either construction. What then are the circumstances? There was no running account between the parties. The plaintiff had performed a single act of service for which he was entitled to receive compensation. The defendant sent an agent to pay him, not in part, but the whole claim. Money having been paid, the presumption is that it was in full unless the contrary appears. There was no agreement as to the amount the plaintiff was to receive. He was asked to name a sum, but he declined. The defendant's agent therefore named a sum, which the plaintiff received, and, so far as we know, without objection. No claim was made that it was insufficient, and no intimation given that a further sum would ever be required. The de-

fendant would naturally suppose, and the plaintiff must have known it, that the sum paid was received in full for the whole demand. Suppose a house is sold. The purchaser proposes to the seller to pay him for it; the seller declines to name a price, and the purchaser pays what he considers reasonable, which is accepted without objection or qualification. Can it be doubted that the house is fully paid for? In principle that is precisely this case.

But, independent of any extrinsic circumstances, we are inclined to think that the better construction of the language of this receipt will make it a receipt in full. The language is explicit:—" One hundred dollars commission on purchase of mill." It is a reasonable inference that he intended the whole commission and not a part of it. The case of *Fuller* v. *Crittenden*, 9 Conn., 401, strongly countenances, if it does not directly decide, this point. One item in the bill rendered was, " Cost of procuring the mail contract, $50." The bill was receipted in full. The court held, in the absence of mistake or accident on the one hand, or fraud or imposition on the other, that the receipt was in full for the whole cost of procuring the mail contract. In this case there is no pretense of accident or mistake, fraud or imposition.

But there is another circumstance in this case, which, if resorted to, would turn the scale against the plaintiff. This receipt was written and signed by the plaintiff himself. The language is his, and, if ambiguous, should be taken most strongly against him and most favorably for the other party. Conceding that in every other respect the plaintiff's claim is equal to the defendant's, which is certainly all that can be claimed for it, the application of this rule would defeat his claim.

For these reasons we advise a new trial.

In this opinion PARK, C. J., and PARDEE, J., concurred. PHELPS, J., dissented. FOSTER, J., having tried the case in the court below, did not sit.