BUCKLAND W. BULL *vs.* MARY ANNA BULL.

An accord and satisfaction is the settlement of a claim by an executed agreement between the parties in satisfaction of the claim.

Where the claim settled is not a money demand, or, if so, is unliquidated, or if liquidated is doubtful in fact or law, any sum, no matter how small, given and received in satisfaction of the demand, will legally satisfy it, however large.

Where the claim is a money demand, and liquidated and not doubtful, although it can not be satisfied with a smaller sum of money, yet if any other personal property is received in satisfaction, it will be good, no matter what the value. The court will never, in such cases, inquire into the adequacy of the consideration.

For the purposes of an accord and satisfaction it is well settled that no personal property except money has any fixed value, but it will be considered as of the value that the parties fix upon it by their agreement.

Where an offer of an accord is made upon the condition that it be taken in full of all demands, the party to whom it is made has no alternative but to refuse it, or accept it upon such condition; and if he takes it, no protest or declaration made by him at the time can affect the case.

Where a person gives his signature and outward assent to a contract as known to be understood by the other party, he can not afterwards set up his secret belief as to the meaning and effect of the contract, for the purpose of avoiding its effect under the construction given to it by the other party.

BILL IN EQUITY, by a husband against his wife, for an account and delivery of certain furniture and other personal property, claimed to be in her possession and which she refused to give up, and to recover for moneys expended for the benefit of her real estate and for her personal benefit; brought to the Superior Court in Hartford County. The

respondent pleaded in bar an accord and satisfaction, evidenced by a receipt in full signed by the petitioner; and the petitioner, in his replication, averred that the receipt was obtained of him by force and fraud and was given under a mistake, and that it was intended to apply to other demands than those set up in the petition. The following facts were found by a committee.

The petitioner and respondent were married on the 30th day of March, 1853, and lived together in the city of New York until the 2d day of April, 1870, when they separated by mutual consent, since which the petitioner has resided in Hartford, Connecticut, while the respondent has continued to reside in the city of New York. The respondent's father, Edward D. Peters, of the city of New York, died intestate in the fall of 1856, leaving a large estate, a portion of which was duly distributed to the respondent in the spring of 1857, under the laws of the state of New York, and by virtue of those laws and the distribution became her sole and separate estate, for her sole and separate use and benefit. The petitioner for some time previous to November 30th, 1868, was a partner with his brother, Alfred Bull, doing business in the city of New York under the name of B. W. Bull & Co., and he remained a member of that firm from the time it was organized until that date, when it suspended business; and from that time until after the 9th day of September, 1870, he was engaged in collecting and paying the debts and settling the affairs of the firm, for which he was duly authorized.

On the 9th day of September, 1870, and prior to that date, there existed between the petitioner and respondent sundry unsettled and controverted claims, consisting of the claims and demands described in the petitioner's bill in equity, all of which were doubtful, except the claim for furniture purchased with the petitioner's own funds; and if the court should consider the last mentioned claim doubtful in law, then the committee found it to be so. Otherwise, it was not doubtful, except as to value and amount.

There was also a claim in favor of the petitioner against the respondent to recover the possession of sundry pictures

belonging to him, and which the respondent had in her possession and wrongfully withheld against his wishes.

There also existed an unsettled, doubtful, and controverted account and claim in favor of the firm of B. W. Bull & Co. against the respondent, for divers sums of money paid and expended by the firm, which, it was claimed, she had promised and was liable to repay.

On or about the 20th day of March, 1870, the last mentioned account in favor of B. W. Bull & Co., also the claim in favor of the petitioner for the pictures, were left by the petitioner in the hands of one Frederick S. Tallmadge, an attorney at law, residing and doing business in the city of New York, for collection, and after that day and before the 9th day of September, 1870, the parties had, from time to time, negotiations relative to the settlement of the claims and matters so left with Mr. Tallmadge; but no prior negotiations between the parties were ever had relative to the matters contained in the petitioner's bill in equity; and these last mentioned matters were never left in the hands of Mr. Tallmadge for collection, nor intended by the petitioner to be the subject of negotiation and settlement, except so far as the petitioner's legal intention may be inferred and implied from the facts herein found.

On or about the first day of February, 1869, the petitioner, in behalf of the firm of B. W. Bull & Co., and for the sole benefit of the firm, borrowed of one James Barclay the sum of $2,000, upon the security of a promissory note for that sum executed by the respondent, and payable to Barclay; the petitioner also, at the same time, offered to secure the payment of the note by delivering to Barclay sundry pictures belonging to him of greater value than the amount of the note. The respondent executed the note to Barclay, under the belief and understanding that the note would be secured by the pictures, and she supposed the pictures had been so delivered to Barclay, until the making of the compromise between the petitioner and respondent hereinafter mentioned; but Barclay did not require any other security than the note of the respondent, and no pictures were, in fact,

ever delivered to him for that purpose, and the note remained outstanding and unpaid until the meeting of the parties hereinafter mentioned.

On the 9th day of September, 1870, the petitioner and one Thomas M. Peters, the agent of the respondent, duly authorized by her, met at the office of Mr. Tallmadge in the city of New York, for the purpose, on the part of the petitioner, of settling the claims and account left with Mr. Tallmadge for collection, and on the part of the respondent, by her agent, for the purpose of settling these claims and all claims and demands which the petitioner had or claimed to have against her.   During the negotiation the respondent's agent made to the petitioner the following offer of compromise and settlement, namely, that the respondent would pay the note to Barclay and relinquish all claim to the pictures, (which it was then supposed by her had been pledged to Barclay as security,) and pay the petitioner the sum of $1,500, and deliver up to him all the pictures claimed by him, except seven, which were known as being the three bought at Dusseldorf in 1859, and the four bought at Trieste the same year, which were to be relinquinshed to her by the petitioner, and that the petitioner should execute and deliver to her a receipt in full of all demands.

The petitioner accepted this proposition, except as to giving a receipt in full, but the agent of the respondent insisted upon such a receipt as an essential condition, upon which alone he would pay the $1,500, deliver the pictures, and pay the note.   The petitioner then stated to the agent that they had met to settle only the account and matters in the hands of Mr. Tallmadge, and not any matters of account between himself and the respondent, and he then asked the advice of Mr. Tallmadge as to the effect and validity of a receipt in full, and was then informed by him that such a receipt would not be binding if obtained by force, fraud, or misrepresentation ; and the petitioner, having full confidence in Mr. Tallmadge, and believing it safe to sign any receipt that he would draw, and that he would not draw any receipt which would operate to discharge any other demands than those

left with him for collection, thereupon consented and agreed to execute and deliver to the respondent any receipt which Mr. Tallmadge should draw.

Mr. Tallmadge then wrote the following receipt, and the petitioner signed and delivered it to the agent of the respondent:

" Received, New York, September 9th, 1870, of Dr. Peters, on behalf of Mrs. Bull, fifteen hundred dollars, and also sundry pictures, being all claimed by Mr. Bull in his list, except the three bought at Dusseldorf in 1859, and the four purchased the same year in Trieste, which are yielded to her; this settlement being in full of all claims and demands against Mrs. Bull.                              B. W. BULL."

There was no force, fraud or misrepresentation on the part of the respondent or her agent, to induce the petitioner to sign this receipt, but he signed and delivered it under the firm belief that it could not and would not have the effect to discharge any of the claims mentioned in the petition; but there was on his part no other mistake with regard to it.

The agent of the respondent had no knowledge of any of the claims contained in the bill in equity at the time of the settlement, and did not make the offer of compromise or agree to the terms of settlement with any conscious reference thereto, but the respondent and her agent had at the time good reason to believe, and did firmly believe, that if there were then existing any claims in favor of the petitioner against her, all such claims, though unknown to her, were to be, and were, included in the settlement; and such belief induced her and her agent to enter into the settlement and pay the sum of $1,500 and the Barclay note; and the petitioner had at the time he executed the receipt reason to believe that the respondent and her agent understood that the effect of the settlement, and receipt, and payment, would be to release and discharge all demands which the petitioner had against the respondent; and if, in the opinion of the court, the additional fact that the petitioner did so believe, could be fairly inferred and implied from all the other facts found, then the committee so found, otherwise not.

The sum of $1,500 was duly paid by the respondent to the petitioner, and all the pictures claimed by him except the seven above mentioned were duly delivered to him, and the note to Barclay was duly paid by her, and everything required by the terms of the settlement to be done by her was then and there duly performed by her; but two of the seven pictures, which by the settlement were to be relinquished by the petitioner to her, have never been delivered by him, but still remain in his hands.

The petitioner received the $1,500, but paid the same over immediately to the firm of B. W. Bull & Co., and he derived no benefit at all from the payment, except as a member of that firm.

The pictures claimed by the petitioner, including the seven relinquished to the respondent, were all the property of the petitioner, and he was, at the time of the settlement, entitled to the immediate possession of the same, and the respondent had no right whatever to the same or any part of them.

The value of the seven pictures relinquished to the respondent, at the time of the settlement, was not less than $2,500.

For some time prior to September 9th, 1870, the petitioner had lived in Hartford, and the respondent had continued to reside in New York, in the dwelling-house where they had formerly lived together, and where a portion of the furniture claimed by the petitioner remained in her possession. Within a few days before that date the respondent left the country without the knowledge of the petitioner, and at the time of the meeting at Mr. Tallmadge's office the petitioner did not know that the furniture had been disposed of with the intention of depriving him of the same, and no controversy as to the possession of the same had then arisen.

The furniture was disposed of in some way unknown to the petitioner, and he has been unable to secure the same or to discover what disposition was made of it.

If, upon the foregoing facts, the court should be of opinion that the law is so that the plea of the respondent, with regard to the accord and satisfaction, is sustained, and that the suit

in equity is thereby barred, then the committee so found; but if the court should be of opinion that the law is so that the plea is not sustained, and that the suit is not thereby barred, then the committee so found.

Upon this finding the case was reserved for the advice of this court.

*W. Hamersley*, for the petitioner, contended that the receipt given by the petitioner on the 9th of September, 1870, was no bar to the claims set forth in the petition; that those claims were not included in the accord and satisfaction between the parties set up in the answer; and that the claim for the furniture belonging to the petitioner had not been made at the time of the accord and satisfaction, and could not have been included in it.

*F. Fellowes* and *R. D. Hubbard*, for the respondent.

LOOMIS, J. This is a bill in equity, brought by a husband against his wife, to recover moneys expended for furniture, for the repairs and alteration of houses, for jewelry, dresses, traveling expenses and personal luxuries, amounting in all to $30,996.64; and also for an account and delivery of furniture, paintings, bronze and table ware, in all of the value of ten thousand dollars, which the bill alleges the defendant has taken possession of, secreted, and refuses to deliver.

In bar of all these claims the defendant pleads accord and satisfaction, both evidenced by the following written instrument, called a receipt in full, and signed by the petitioner in his individual name:—" Received, New York, September 9th, 1870, of Dr. Peters, on behalf of Mrs. Bull, fifteen hundred dollars, and also sundry pictures, being all claimed by Mr. Bull in his list, except three bought at Dusseldorf in 1859, and the four purchased the same year in Trieste, which are yielded to her; this settlement being in full of all claims and demands against Mrs. Bull."

The accord proved to have been made in connection with the giving of this receipt was, that the defendant should pay

the plaintiff, "by way of compromise and settlement," the sum of $1,500 in cash, take up the Barclay note of $2,000, given for the benefit of the plaintiff, without charge to the plaintiff, and deliver all the pictures in controversy, save seven specially named, which were "relinquished and given" by the plaintiff to the defendant; and it was agreed that this arrangement should be "in full of all claims and demands against Mrs. Bull."

The plaintiff admits the payment of the money and the performance of all the acts to be done on the part of the defendant, and the execution and delivery on his part of the receipt in full. But he claims that those payments were made on account of the firm of B. W. Bull & Co., of which he was a member, and had no relation to his individual claims as set forth in the petition, and that there was no consideration for the receipt in full, and that the signing of the receipt was obtained from him by force, fraud and mistake.

The record contains a special finding of all the facts relied upon; and the question is whether such facts sustain the accord and satisfaction so pleaded in bar.

An accord and satisfaction may be briefly defined as " the settlement of a dispute or the satisfaction of a claim, by an executed agreement between the party injuring and the party injured," or, to give a definition indicating more definitely its peculiar nature, it is " something of legal value to which the creditor before had no right, received in full satisfaction of the debt, without regard to the magnitude of the satisfaction." 1 Smith's Leading Cases, (10 Am. ed.,) p. 558.

In this case if there was a sufficient accord there was also a sufficient satisfaction, for the record finds that "everything required by the terms of said agreement, was then and there duly performed by the defendant."

The parties are at issue upon three questions only, viz: 1st, Whether the accord embraced the claims in the bill or not. 2d, Whether there was a good consideration. 3d, Whether there was force, fraud or mistake sufficient to set aside the agreement.

First: Was there such a meeting of the minds of the par-

ties as to matters specified in the petition as to constitute an accord?

And here the plaintiff claims that the accord had no relation to the matters in the bill, but was confined to the claims in favor of B. W. Bull & Co. This position however at the outset has to encounter these stubborn facts:—that the accord was evidenced by a written instrument which on its face purports to be a receipt in full of all claims and demands which the plaintiff had against the defendant, the language of which is broad enough to cover all the claims in the plaintiff's bill, and there is not a word referring to any claim in favor of the firm; and moreover it is signed by the plaintiff individually.

But if we go back of these facts to examine the essence of the transaction, what do we find? On the one hand, we see that it is certain that not only all the acts and words of the plaintiff, but the real intent of mind on the part of the defendant, covered all the claims of every nature in favor of the plaintiff and against the defendant. On the other hand, the only question that can be raised is, whether the mind of the plaintiff so met that of the defendant as to make a valid agreement in discharge of the claims referred to. And the doubt on this point arises wholly from the fact that the finding gives the plaintiff the benefit of his secret and uncommunicated belief that Mr. Tallmadge, his attorney, would not draw a receipt that would cut off the claims in the bill. And the legal question is, whether this fact can defeat the accord.

We think it cannot, under the circumstances of this case. The defendant, by her agent, from first to last insisted on a receipt in full of all claims and demands, as an essential condition upon which alone she would pay the sums of money specified. To this condition the defendant at first objected, on the ground that they had met to settle the claim of B. W. Bull & Co., and not his individual claims against the defendant, showing by that remark that he had some idea of the effect of a receipt in full. But finally, having had correct legal advice as to the effect of a receipt in full, he distinctly agreed to sign any receipt which Mr. Tallmadge might draw.

This certainly amounted to an agreement that if Mr. Tallmadge should write for him just such a receipt as the defendant demanded, he would sign it. For the time being he adopted as his own the consenting mind of Mr. Tallmadge, whose assent became his assent. Thereupon Mr. Tallmadge (who had been present during the negotiations) prepared the receipt in full mentioned in the record, and the plaintiff, well knowing its terms, and advised of the general rule governing its legal effect, deliberately signed it in his individual name.

Now from the time the plaintiff agreed to sign any receipt which Mr. Tallmadge would draw, he uttered no word and gave no outward sign of dissent to the proposition of the defendant; but went on and delivered the receipt and accepted the money of the defendant, knowing (as we think the facts found require us to say,) that she understood the arrangement to be a full and complete settlement and discharge of all claims and demands he had against her.

Suppose the plaintiff, after first objecting to the condition prescribed, should, upon its being insisted on, have yielded, and accepted the proposition of settlement—would he be allowed to impeach the accord by setting up a belief kept in the secret recesses of his own mind and never disclosed to the other party? Does the reference of the question to his attorney, well versed in the law, give him any greater right to nullify his agreement? Does it not rather make his posision still more untenable, if not absurd?

We find the plaintiff, who was a trained and intelligent merchant, entering into a compromise with his wife, not inadvertently or by surprise, but with his eyes open, after full information of all the essential facts, and pursuant to the advice of his own counsel learned in the law. He first asked his lawyer "as to the effect and validity of a receipt in full," and was informed, "that a receipt in full would not be binding if obtained by force, fraud, or misrepresentation," which was also equivalent to saying that it would be binding if not so obtained.

Under these circumstances, when the plaintiff executed the

receipt and took the money of the defendant, he must be held to have agreed that it should be in full of all demands unless vitiated by force, fraud or misrepresentation, all of which are distinctly negatived by the finding.

Where a person gives his signature and outward assent to the terms of an agreement as known to be understood by the other party, the act of setting up a secret belief to nullify the contract so understood, after it has been executed, cannot well be distinguished in principle from that species of fraud known as the " *suppressio veri.*"

The position of the plaintiff in this part of the case is most extraordinary, in that he seeks to appropriate to himself all the benefits of the defendant's understanding of the contract, while, at the same time, he repudiates all its disadvantages, and substitutes therefor all the benefits of another and different contract, formed only in the secrecy of his own mind. The law refuses to be made the instrument of such injustice. There are high legal authorities to sustain the result we have reached on this part of the case.

This precise question has not perhaps been discussed by this court, but principles of construction have been adopted leading to the same result.

In *Elting* v. *Sturtevant*, 41 Conn., 176, the question was, what construction should be given to a receipt, and CARPENTER, J., in giving the opinion, on page 182, said:—" The difficulty is that there is reason to believe that the party receiving the money and giving the receipt understood it in one way, and the party paying the money and taking the receipt understood it in another.   In such a case, the language being ambiguous, we ought to construe it as understood by the party taking it, especially if the circumstances will justify the inference that the other party knew that he so understood it."

In other states we find well considered cases almost identical in principle with the one now under consideration.

In *Vedder* v. *Vedder*, 1 Denio, 257, Beardsley, J., in delivering the opinion of the court, stated the facts of the case and discussed the law applicable thereto as follows:—"On the first of June, 1844, the defendant had a right of action against the

plaintiff for damages done by his cattle; and at the same time, as may be assumed for the purpose of the present question, and, indeed, as was clearly proved on the trial, the plaintiff had a substantial ground for a suit against the defendant for a trespass on his land, and for placing and leaving upon it the carcasses of dead dogs, so as thereby to corrupt and render unfit for use the water of a stream to which the plaintiff and his family resorted for domestic purposes.   The plaintiff was willing to pay for the damages done by his cattle, but the defendant exacted as one of the terms of settlement for that injury, that the plaintiff should give him a receipt in full for all demands which the plaintiff had against him.   Upon this ground the parties made their settlement; the plaintiff paid eight dollars and gave a general receipt to the defendant, stating that he had received one dollar in full of all demands, and the defendant gave a receipt for the eight dollars which the plaintiff paid to him.   It is probable that the plaintiff was not fully aware of the effect of what was required of him, or of what he was about to do; but he knew what was exacted, and although he yielded reluctantly, he finally executed this receipt.   Upon the evidence given at the trial there was no room for dispute that the plaintiff agreed to give a receipt in full of all demands in his favor, and that this was done as one of the means of adjusting the claim upon him for damage done by his cattle.   The effect of the arrangement, as made and executed by the parties, was a question of law for the court, and not for tho jury to pass upon.   There was no fraud in the arrangement; the plaintiff was told distinctly what was exacted of him.   He knew or was bound to know the law, and consequently to know that what was exacted, if yielded by him, would be an accord and satisfaction of all demands in his favor, and that they would thereby be absolutely extinguished and gone forever.   The consideration for this arrangement was ample and beneficial to both parties. In addition to the payment of eight dollars by tho plaintiff, mutual rights of action were extinguished; on the one hand the right of action against the plaintiff for the trespass of his cattle, and on the other all demands in favor of the plaintiff against the defendant."

The principles of law contained in the above opinion have been approved by Judge Redfield, and incorporated into an additional section in his revision of Greenleaf's Evidence. 2 Greenl. Evidence, 10th Ed., § 28 *a.*

In *Preston* v. *Grant*, 34 Verm., 201, Pierpont, J., in giving the opinion said:—"To constitute an accord and satisfaction it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes subject to such condition. When a tender or offer is thus made, the party to whom it is made has no alternative but to refuse it or accept it upon such condition. If he takes it his claim is canceled, and no protest, declaration or denial of his, so long as the condition is insisted on, can vary the result."

In *McDaniels* v. *Lapham*, 21 Verm., 222, the same principle was adopted, and is thus expressed by Poland, J.: "When a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and attaches to his offer the condition that the same if taken at all must be received in full or in satisfaction of the claim in dispute, and the other party receives the money, he takes it subject to the condition attached to it, and it will operate as an accord and satisfaction, even though the party at the time of receiving the money declare that he will not receive it in that manner, but only in part satisfaction of his debt so far as it will extend." We also find the same doctrine in *McDaniels* v. *Bank of Rutland*, 29 Verm., 230.

In *Donnohue* v. *Woodbury*, 6 Cush., 150, it was held, (Shaw, C. J., giving the opinion,) that "if one owing a sum of money, the amount of which is not ascertained and fixed, offer his creditor a certain sum, declaring it to be for all that he is owing him, which sum is accepted by the creditor, such acceptance is a full discharge of the demand, although the words spoken by the debtor are not heard by the creditor through inattention or carelessness, provided they are so

spoken that with ordinary care under the circumstances they might have been heard by him."

The foregoing principles and legal authorities justify the conclusion that there was in the present case a sufficient meeting of the minds of the parties to constitute an accord and satisfaction which included the claims in the plaintiff's bill.

We felt some hesitation on the question whether the furniture sought to be recovered in specie was, in fact, the subject of the accord and satisfaction. It is however certain from the finding that whatever right the plaintiff has to recover the same existed at the time when the accord was made, and might therefore have been embraced in a compromise covering all claims. In the first part of the finding it is included among the "unsettled, doubtful and controverted claims" existing at the time of the accord, but near the end of the finding the additional fact is stated that no controversy had then arisen as to the possession of the furniture, which is one item of evidence tending to show that this claim was not included in the settlement. On the other hand, if we hold the plaintiff as agreeing to what he knew or had good reason to believe was the understanding of the defendant, then all existing claims, known or unknown, were contemplated.

It is not very important for the purposes of this case which view we take of this question. There was nothing proved to connect the wife with this matter, except the fact that when the parties separated the furniture was in the house where they had been living and where the wife still remained, and that, a few days before the accord was made, she left the country, and the plaintiff has not been able to ascertain what has become of the furniture.

Now, notwithstanding the acknowledged flexibility of equity jurisprudence as a remedy for injustice, we do not see how it can be legitimately used in a case of this kind, to enable the plaintiff to find and recover his furniture. If it is his, the law gives a more summary process to take it when and where he can find it. If therefore we should except the furniture from the operation of the accord, further litigation under an invalid remnant of the bill would be fruitless, and the accord

and satisfaction would still prove a complete bar to all the claims that could be recovered in this suit.

2. The second element of the accord and satisfaction which is in dispute relates to the consideration.

The principle of law bearing on this point is well settled by many authorities, that "where the claim is not a money demand, or, if so, is unliquidated, or if liquidated is doubtful in fact or law, any sum, no matter how small, given and received in satisfaction of any demand, no matter how large, will legally satisfy that demand as a compromise." *Tuttle* v. *Tuttle*, 12 Met., 554; *Palmerton* v. *Huxford*, 4 Denio, 167; *Warren* v. *Skinner*, 20 Conn., 562; *Pierce* v. *Pierce*, 25 Barb., 243; *U. States* v. *Childs*, 12 Wall., 233; 1 Smith's Leading Cases, 555.

It is also well settled that a court will never in such cases inquire into the adequacy or inadequacy of the consideration. *Reid* v. *Bartlett*, 19 Pick., 273; *Fisher* v. *May*, 2 Bibb, 449; *Taylor* v. *Patrick*, 1 Bibb, 168; *Union Bank* v. *Geary*, 5 Pet., 114; 3 Leading Cases in Equity, 390, 406.

The facts bearing upon this part of the case are thus stated in the finding:—"On the 9th day of September, 1870, and prior to that date, there existed between the petitioner and respondent sundry unsettled and controverted claims, consisting of the claims and demands in the petitioner's bill in equity, all of which were doubtful, except the claim for furniture purchased with the petitioner's own funds; and if the court shall consider the last mentioned claim doubtful in law, then the undersigned so finds; otherwise it is not doubtful, except as to value and amount."

It is clear that the last mentioned claim must also be considered doubtful. Only two other claims are referred to in the finding. One is the claim of B. W. Bull & Co., which is expressly found to be "unsettled, controverted and doubtful," and the claim for pictures, which, although it is found that the defendant had no legal right to retain them, was yet an unsettled and controverted claim, if not doubtful of recovery in law.

The defendant paid fifteen hundred dollars in cash, and

discharged the Barclay accommodation loan, amounting to more than two thousand dollars, with the interest, and she delivered all the pictures except the seven "relinquished and given" to her.   Now if the claim for pictures was not doubtful and the value of those relinquished to her was $2,500, there was a balance of one thousand dollars to furnish a consideration for the doubtful claims, and this would answer the law.   But the value of the pictures, as found by the court, is really immaterial on the question of consideration, for it nowhere appears that the pictures entered into the compromise at the value named or at any definite value.   And it is well settled that for such purposes no personal property, except money, has any fixed value in law.   The value is to be fixed by the parties in their agreement.   From this principle arises an important distinction, that while a liquidated money demand cannot be satisfied by a smaller sum of money, yet if any other personal property is received in satisfaction it will be good, no matter what the value.   So on the other hand, if there is an unliquidated claim for personal property, any sum of money however small, agreed upon by the parties for that purpose, will constitute a good accord and satisfaction.

We conclude therefore that the arrangement agreed upon by the parties in this case in respect to the consideration had all the essential elements required by law.

3.   The only remaining question is, whether there was any force, fraud, or mistake, that can render the accord invalid.

The finding of the court that there was no force, fraud or misrepresentation, disposes of two parts of this objection. And as to mistake, what we have already said on this subject, while discussing the effect of the plaintiff's secret belief, will suffice to show that there was no such mistake as entitles the plaintiff to favorable consideration in a court of equity.

We advise judgment in favor of the respondent.

In this opinion the other judges concurred.