## Burchard-Hulburt Investment Company, Plaintiff in Error, v. Nels Hanson et al., Defendants in Error.

1. INSTRUCTIONS—*upon what complaint cannot be predicated.*
Complaint cannot be made that the court instructed the jury upon
a particular theory if the party making such complaint had pro-
ceeded in the trial court upon such theory.

2. INSTRUCTIONS—*use of phrase "bearing upon the plaintiff's case"
criticised.* The use of the phrase, "bearing upon the plaintiff's case,"
held, subject to criticism, but, in this case, not ground for reversal.

3. INSTRUCTIONS—*effect of giving or refusing abstract proposition
of law.* It is not error to refuse an instruction which is in form
but an abstract proposition of law; neither is it error to give one of
that character unless it be misleading.

4. CONTRACTS—*what essential to constitute valid.* To consti-
tute a valid and binding contract, it is essential that both parties
assent to the same thing in the same sense.

5. CONTRACTS—*when acceptance of proposition does not effectuate.*
Acceptance of a proposition with a condition attached does not es-
tablish a contract until the condition has been assented to.

6. ESTOPPEL—*when principle of, in pais, arises.* It is only where
an act is done or a statement made by a party which cannot be
contravened or contradicted without fraud on his part, and injury
to others whose conduct has been influenced by the act or omission,
that the doctrine of estoppel *in pais* arises.

Assumpsit. Error to the Circuit Court of Ford county; the Hon.
T. M. HARRIS, Judge, presiding. Heard in this court at the Novem-
ber term, 1907. Affirmed. Opinion filed April 21, 1908.

SCHNEIDER & SCHNEIDER, for plaintiff in error.

A. L. PHILLIPS, for defendants in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of
the court.

This is an action in assumpsit brought by plaintiff
in error against defendants in error upon an alleged
written contract for the purchase and sale of certain
real estate. The trial in the Circuit Court resulted in
a verdict and judgment for the defendants, whereupon
the plaintiff sued out from this court a writ of error.

The instrument the breach of which is the basis of this action, bears the date of September 23, 1905, and recites that it is made between Burchard-Hulburt Investment Company, a corporation, and Nels Hanson; that the Company, in consideration of the sum of $14,000, to be paid as thereafter specified, agreed to sell to Hanson certain real estate in the State of Minnesota therein described; that Hanson agreed to purchase said real estate and to pay therefor the sum of $14,000, that is to say, $1,200 at or before the execution of the contract, the receipt of which is thereby acknowledged, and the balance at the times and in such installments as are therein specified, at the office of the company at St. Paul, and that upon the full performance of said contract by Hanson, the Company should convey said described real estate to him. It further provided that upon the failure of Hanson to pay the respective instalments of the purchase price when due, the company may, at its option, declare the whole consideration due and payable, and that in case there should be a crop failure on the lands then there should be no payments of principal or interest due on account of said contract, but that the company should carry over to the next year the payments of principal and interest then due.

The contract further recites that the parties had thereunto subscribed their names in duplicate on the day of its purported date, and is signed by the president of the company and by Nels Hanson and Kate Hanson, who are described as ''purchasers.''

The declaration consists of the common and four special counts, two of which allege the failure to pay the entire consideration and two to pay the first instalment. The second special plea of the defendants alleges that the writing set out in the declaration was but a written proposition for the purchase of the lands therein described and that such proposition was not accepted by the plaintiff, and the plaintiff refused to deliver a copy of said instrument to the defendants

unless the defendants would sign certain promissory notes not mentioned in the instrument. The third special plea contains similar allegations to the second and further alleges a tender by the defendants to the agent of the plaintiff, the refusal of such agent to deliver such copy to the defendants, and that the defendants then withdrew said written proposition. Demurrers to said pleas were interposed and overruled. The plaintiff then filed a replication to the pleas setting forth that on October 13, 1905, the defendants delivered to the plaintiff a written notice reciting that they had elected to declare the contract between them forfeited because of the failure of the plaintiff to comply with the same, and praying judgment if they, the defendants, should be received or admitted to aver contrary to what they had before said. A demurrer to said replication was sustained. By failing to abide by its demurrer to the special pleas after demurrer overruled or by the replication after demurrer sustained, appellant elected to proceed to trial upon the issue as to whether or not the instrument was a proposition or a completed contract. At the conclusion of the evidence, it offered instructions upon the same theory.

It cannot therefore now insist that the rulings of the court upon the demurrers or the submission of such issue to the jury for their determination was error.

While the evidence relating to several minor issues of fact is in conflict, the jury were not unwarranted in finding the following facts which the evidence adduced by the defendants tends to establish: Appellant was a corporation organized under the laws of Minnesota, having its general office at St. Paul and was engaged in selling lands. On September 20, 1905, appellee, Nels Hanson, who was a farmer living near Gibson City, Illinois, and the husband of appellee, Kate Hanson, in company with James Gilliland, an agent of the appellant company, went to Minnesota to inspect land which it had for sale. He selected a tract which he decided to purchase and then went to the office of ap-

pellant at St. Paul where, after a conference with Burchard, the president of the company, a draft of the alleged contract in question was prepared but was not executed by Hanson for the reason that he desired to first consult his wife. He then, in company with Gilliland, returned to Gibson City. Upon their arrival Gilliland went to the home of appellees with the notes and duplicate copies of the contract for the purpose of procuring their signatures to the same and closing the transaction. They refused, however, to sign the contract unless the consideration was reduced from $14,400 to $14,000. Gilliland then altered the contracts accordingly, whereupon appellees signed the same upon the express condition however that if the contract as changed was approved by the company and signed by it and a duplicate thereof delivered to appellees the contract was to become effective and they would then make the first payment of $1,200, but not otherwise. Upon the following day the parties by appointment met at a bank in Gibson City when Gilliland reported that the company had approved the contract as altered and requested appellees to sign the notes and make the first payment. They declined to do so for the reason that the notes contained no provision for extending the maturity thereof in the event of crop failure, as provided by the contract. Nothing further was done in the matter until October 2, 1905, when the bank received by mail a letter from the company enclosing a copy of the contract as altered, signed by the company, together with notes for the deferred payments and requesting the bank to close the transaction by having the notes signed by appellees and collecting from them the first payment with directions that upon this being done to deliver to appellees a duplicate copy of the contract. On October 13th following, in response to a notice, appellee, Nels Hanson, went to the bank, tendered a check for the first payment and demanded a duplicate copy of the contract. The cashier refused to accept the check or deliver the contract unless the notes

were signed. Shortly thereafter appellees served upon the bank written notice described in the replication. On October 18, 1905, the company, by its attorneys, tendered to appellees a duplicate copy of the contracts and demanded in writing the first payment of $1,200. They refused to accept said copy or to make the payment, whereupon the company instituted the present suit.

The decisive and controlling question involved is whether or not a valid and binding contract at any time existed between the parties. To constitute a valid and binding contract it is essential that both parties assent to the same thing in the same sense. The first draft prepared and signed by the company was but a proposal to enter into such a contract. The execution and return by appellees of such draft to the company, after the same had been materially altered, may properly be treated as a rejection of the original and the submission of a counter-proposition in effect offering to enter into the contract as altered, if the same was satisfactory to the company, subject to the further condition that they may be furnished a duplicate copy thereof before the same should become effective and binding. The approval and execution of the altered draft by the company and the instructions to the bank to deliver a duplicate copy of the same to appellees upon their signing notes for the deferred payments, manifestly did not constitute an acceptance of the counter-proposition of the Hansons, but was in effect an offer by the company to accept the same upon the further condition that appellees should execute such notes for the deferred payments. The refusal of appellees to execute such notes amounted to a refusal to accept the latter proposition. The subsequent tender by appellees of the first payment and demand for a duplicate copy of the proposed contract was but a further proposition and the failure to furnish such copy a refusal thereof.

It follows that there was no time during the negotia-

tion when it could be said that the minds of the parties met and the precise alleged contract sued upon assented to by all of the parties. In this view of the law the contentions and arguments of counsel as to the law relating to the rescission of the contracts necessarily predicated upon the assumption that a valid and binding contract was at any time in force, became unimportant.

While we do not approve of the expression "bearing upon the plaintiff's case" as used in appellees' first given instruction we are satisfied that the jury must have understood the instruction as it was obviously intended, and we do not think that the jury were misled thereby to the prejudice of appellant. The giving of appellees' second instruction could not have prejudiced appellant. It pertained only to the joint liability of appellee, Kate Hanson, with her husband, and under the views already expressed no liability existed against either or both. Although it is not error to refuse an instruction which is in form but an abstract proposition of law, neither is it error to give one of that character unless it be misleading. Appellees' third and fourth instructions when read together may be said to be concrete. They correctly state the law applicable to the issues framed by the pleadings, and the court did not err in giving the same. Appellant's refused instructions numbered two and three were cautionary in character. It was discretionary with the trial court whether or not they should be given and we cannot say that such discretion was abused to the prejudice of appellant. Appellant's seventh instruction was offered upon the theory that there was evidence tending to show that a full and complete contract existed between the parties. It was therefore not error to refuse the same for reasons hereinbefore stated.

It is urged that the demurrer to the replication to appellees' third and fourth pleas should have been overruled. That having by their written notice declared "the contract entered into September 23, 1905,

for the purchase of land, etc., forfeited'' acknowledged and assumed that the writing was a contract, they were estopped to claim that it was merely a written proposition. It is only where an act is done or statement made by a party which cannot be contravened or contradicted without fraud on his part, and injury to others whose conduct has been influenced by the act or admission, that the doctrine of estoppel *in pais* arises. Notwithstanding appellees may have been mistaken as to the legal effect of the transaction in question, it is manifest that their act of admission after all negotiations have ceased, could not have influenced the subsequent conduct of appellant to its disadvantage.

For this reason alone the ruling upon the demurrer was proper.

The judgment of the Circuit Court is affirmed.

*Affirmed.*