STROOCK PLUSH COMPANY *vs.* NEW ENGLAND COTTON YARN COMPANY.

Suffolk.   November 15, 1912. — January 28, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract,* What constitutes, Construction.

A cotton broker made and signed a sale note showing a sale by a manufacturer of cotton yarns, for whom he might have been found to have been acting, of a quantity of cotton yarn to be delivered before November 1 of a certain year, shipments to be specified by the purchaser, who agreed to give at least one month's notice of deliveries required.  The broker sent duplicates of the note to the manufacturer and to the purchaser by letters.  The manufacturer at once informed the broker that he would accept the note as written with the understanding that the purchaser would not call for more than a certain number of pounds per month, and the broker so informed the purchaser by letter.  The purchaser replied at the same time both to the broker's letter enclosing the sale note and to that stating the manufacturer's proposed modification of the agreement, stating that he was unwilling to accept the modification.  There was much correspondence between the parties through the broker which finally ended in a letter from the purchaser stating a certain amount of yarn which, he was "quite sure," would "be the maximum" that he would require in any month.  This the manufacturer understood to be an agreement by the purchaser not to ask for more in any month than the amount so stated as a "maximum."  The purchaser, on September 17, asked for shipments in excess of the "maximum" stated.  The manufacturer shipped a certain sum less than such "maximum."  In an action by the purchaser for the difference between the contract price and the market price of the yarn which he had ordered and which had not been delivered, the manufacturer admitted liability as to the amount less than the maximum which he had shipped in the last month of the contract.  *Held,* without determining whether any contract was made by the parties, that the defendant's liability did not exceed what he admitted.

CONTRACT upon an alleged contract in writing for the sale by the defendant to the plaintiff of cotton yarn, claiming damages for the defendant's failure to deliver the amount of such yarn alleged to have been required by the contract.  · Writ dated January 5, 1910.

Material portions of the sale note, alleged in the declaration to be a contract, were as follows:

"November 12th, 1908.

"Sold for account of New England Cotton Yarn Company, Boston, Mass.

By J. M. Prendergast & Co.

Cotton Goods and Yarn Brokers.

To Stroock Plush Company, Newburgh, New York.

"About one hundred and fifty thousand (150,000) pounds of No. 8–1 A. M. B. quality yarn, on seller's section beams, to be delivered ten (10) beams as promptly as possible. Balance of deliveries to begin about January 15th, 1909, and shipments to be specified by buyer, it being understood buyer will give at least one (1) month's notice of deliveries required. This contract to terminate November 1st, 1909. . . .

Price Fifteen (15) cents per pound, less two (2) per cent,

Terms Cash tenth (10th) of month following date of shipment,

Deliverable Free on board at Newburgh, New York.

J. M. Prendergast & Co.

Brokers.

Shipping directions

Stroock Plush Company,

Newburgh, New York."

In the Superior Court the case was heard by *Dana,* J., without a jury. There was evidence tending to show that J. M. Prendergast and Company were cotton goods and yarn brokers who had done business with the defendant for seven or eight years, acting as agents or brokers for it, and during that period had sold a considerable amount of yarn for it to various purchasers including several sales to the plaintiff; that they acted as brokers in this transaction; that before the sale note was prepared a representative of the brokers talked over the telephone in regard to it with the sales manager of the defendant; that in the course of dealings with the defendant J. M. Prendergast and Company had no authority to sign sale notes so as to bind the defendant and that it was necessary that sale notes should be submitted to the defendant for confirmation. There also was evidence that no notice of any special limitation upon the general authority of J. M. Prendergast and Company to act for the defendant ever was given to the plaintiff.

It appeared that the sale note, which was set out as a contract in the declaration, was prepared by J. M. Prendergast and Company after negotiations with both parties, the original being sent in a letter to the plaintiff and a duplicate original being sent in a letter to the defendant. The letter to the plaintiff stated, among other things, the following: "We trust you will find the sale note correct and satisfactory in every particular. The N. E. Cotton Yarn Company requested us to ask you to be sure and make an arrangement so as to give them at least one (1) month's notice for each set of deliveries you will require. They would prefer to have 6 weeks' notice if you can see your way clear to give it to them. They are very busy on this grade of work and they say it would be for your interest to give them as long a time notice as you can so there will be no chance of any slip up in their furnishing the deliveries just as you want them. It will be satisfactory for you to return the beams freight collect as on previous order. We thank you very much for the order and hope everything is entirely satisfactory."

The defendant, immediately upon receiving the letter enclosing the duplicate original of the sale note, made by telephone to J. M. Prendergast and Company the statements which are set forth in a letter written by J. M. Prendergast and Company to the plaintiff on November 12, 1908, which was as follows: "Referring to our previous letter of today enclosing sale note for the No. 8-1 warp purchased from the N. E. Cotton Yarn Company we delivered the duplicate sale note of this transaction to the seller. They stated that they will agree to accept this as written with the understanding that you do not call for *over* 15,000 pounds per month at any time during the term of contract. Also if you wanted us to make the time of expiration changed from November 1st to say December 1st or January 1st they will be glad to do this for you. We would be pleased to hear from you on these points by return mail.

"Of course it is improbable that you would ask for over 15,000 pounds per month but the N. E. Cotton Yarn Company made the request of us to bring this to your attention and see that it was agreeable to you as they would not want to promise to ship over 15,000 lbs. a month at any time."

On November 13, the plaintiff wrote a letter to J. M. Prender-

gast and Company reading as follows: "We have your various communications of the 9th and 12th, and they are all right with the exception that your seller states we are not to insist on more than 15,000 lbs. per month. We do not like to bind ourselves not to take more than the 15,000 lbs.; there is very little likelihood that we shall take over 15,000 lbs. but we want to reserve the right to have occasionally, if necessary, more than the 15,000 lbs. per month. The chances are very much against it, you can write your people, but if we do need more than 15,000 lbs. we will give ample notice so they can furnish it. We trust that this will be agreeable to your seller. Please advise us."

On November 14, 1908, J. M. Prendergast and Company wrote a letter to the defendant setting forth in full the plaintiff's letter of November 13, and on November 16 the defendant replied as follows: "Answering yours of November 14th in reference to Stroock Plush Co's. letter of the 13th in regard to deliveries on their order for 150,000 pounds. Note customer feels that he may use more than 15,000 pounds in one month. This is agreeable to us if he will himself specify maximum quantity he expects to use. We are willing and anxious to accommodate him in every way, but feel that possible ground for misunderstanding in the future will be removed if he will so state. It is a matter of indifference to us whether he specifies as his maximum delivery 10,000 or 25,000 pounds, but we do feel that this is a point which should not be left open for future possible dispute."

The foregoing letter was transmitted to the plaintiff, and on November 18 the plaintiff wrote to J. M. Prendergast and Company as follows: "In reference to your letter in which you say that your seller insists on knowing the maximum amount in any one month, we do not see how we can tie ourselves down. We are not sure just what amount we shall require. My letter of recent date thoroughly explains the situation. It will be very little in excess of 15,000 lbs. in any one month, possibly it may not be nearly as much as 15,000 lbs., but we want and we expect the New England Cotton Yarn Co. to furnish us if necessary, on being given ample notice, to exceed the limit by one, two, three or four thousand pounds. There need be no misunderstanding. The writer simply wants the right during some period in 1909, to anticipate a further supply of yarn more than 15,000 lbs. and up to

20,000 lbs. Twenty, I am quite sure, will be the maximum. I hope this letter will settle the matter as far as your seller and ourselves are concerned."

This letter was transmitted to the defendant, who, on November 19, wrote to J. M. Prendergast and Company as follows: "In reference to delivery . . . note customer states he will not use more than 20,000 pounds in any one month. This maximum is satisfactory to us, and we are making notation on the order accordingly." J. M. Prendergast and Company transmitted this last letter to the plaintiff on November 20 in a letter closing with the sentence, "Will you please advise us if this is satisfactory." The plaintiff made no reply to that letter.

From November 24, 1908, until September 17, 1909, the defendant from time to time made deliveries of yarn to the plaintiff under the contract amounting in all to 96,270 pounds. Such deliveries constituted a full compliance with all requests for deliveries received by the defendant from the plaintiff to September 17, 1909.

On September 17, 1909, the plaintiff wrote to J. M. Prendergast and Company to give instructions to the defendant, "to have them ship all the yarn . . . we have on contract with them." This request was renewed from time to time in letters and the plaintiff suggested, on October 6, 1909, that the defendant might have a reasonable time after November 1 in which to complete the deliveries, but still insisted on having the entire amount of yarn mentioned in the contract. The defendant refused to comply either with the original request to deliver the whole balance before November 1 or with the subsequent request to deliver the whole balance within a reasonable time thereafter. The defendant delivered after September 17, 1909, 16,078 pounds of yarn, making the amount delivered under the contract 112,348 pounds, and then ceased deliveries.

At the close of the evidence, the defendant asked, among other rulings, for the following: "(7) Upon all the evidence in the case the plaintiff cannot recover, in any event, more than the fair market value on November 1, 1909, of 8,403 pounds of yarn of the kind and quality called for by the contract less the contract price for the same number of pounds." This ruling was refused, and the judge found and ruled that the plaintiff was entitled to

recover the difference between the market value on November 1, 1909, of 37,652 pounds of yarn of the sort described in the contract and the contract price therefor, and that such difference in value was five cents a pound.   The judge found for the plaintiff in the sum of $1,882.60; and the defendant alleged exceptions.

*H. W. Brown,* for the defendant.

*Lee M. Friedman,* for the plaintiff.

SHELDON, J.   It is sufficiently manifest that the sale note, so called, drawn by Prendergast and Company, is not to be regarded as a contract between the parties.   The authority of Prendergast to act for the defendant was certainly not clearly shown.   But if it be said that there was some evidence of such authority, or at any rate some evidence that the defendant, in previous transactions with the plaintiff, had so far held out Prendergast as its agent that it could not now deny his authority, yet there was no evidence that he could bind the plaintiff, or that the plaintiff in any way had adopted the terms of the sale note before it was reduced to writing and communicated to the plaintiff on November 12, 1908, by Prendergast's sending to it a duplicate of the sale note.   The utmost effect that could be given to the sale note, therefore, was to treat it as an offer made by the defendant to the plaintiff.   But on the same day the defendant through Prendergast modified the offer by adding a stipulation that the plaintiff must not call for more than fifteen thousand pounds of yarn per month.   The plaintiff's letter of November 13 to Prendergast establishes the fact that it received this modification before it had accepted the defendant's original offer.   The plaintiff was unwilling to accept the offer as thus modified, and there was considerable further correspondence.   Finally the plaintiff wrote a letter which, rightly or wrongly, the defendant regarded as a stipulation by the plaintiff that it would not call for more than twenty thousand pounds of yarn per month, and the defendant consented to this in writing, its consent was communicated to the plaintiff; and deliveries began to be made by the defendant to the plaintiff.

Under these circumstances, it is plain that either there was no binding contract between the parties because the original offer had been modified before its acceptance and their minds never had met upon the offer as modified, or else that the contract contained

a stipulation that the plaintiff should not require the delivery of more than twenty thousand pounds of yarn per month. In the former case, the plaintiff cannot maintain its action at all, and judgment must be for the defendant.

On the latter hypothesis, the defendant would be liable for the non-delivery of about eight thousand four hundred pounds. As· at the argument before us the defendant conceded its liability to this extent, we need not determine which alternative was correct.

The result is that the defendant's seventh request for instructions should have been given; the exceptions must be sustained; and there must be a new trial on the question of damages only.

*So ordered.*