GEORGE H. FINLAY ET AL. *vs.* ISAAC SWIRSKY ET ALS.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

Under our rules (Practice Book, p. 309, § 11) there are three, and only three, exceptions which an appellant may take to a finding of facts: (a) to the refusal to find a material fact which was an admitted or undisputed fact, (b) to finding a fact in language of doubtful meaning, and (c) to finding a material fact without any evidence.

It is entirely futile to assign errors which resolve themselves into a determination of the weight of evidence, or the credibility of witnesses; these are exclusive functions of the trial court which, once performed, are absolutely and immutably final.

A paragraph in a finding which, though not designated as such, is in reality a conclusion, will be so treated by this court upon appeal.

A consideration sufficient to support a promise may be defined as a benefit to the promisor or a detriment to the promisee.

The law of consideration is substantially analogous to the doctrine of estoppel *in pais*, in that it is designed to prevent one who has induced another to change his position in reliance upon a promise, from perpetrating a fraud by subsequently denying its validity.

A promise is a declaration by a person of his intention to do or forbear from anything at the request or for the use of another.

In accordance with present methods of business transaction, contracts are frequently made by the submission by one of the parties to the other of a document in common form setting forth the terms of his offer or proposal; and if this form is accepted by the other without objection, he thereupon becomes bound by its contents, whether or not he reads the document or otherwise informs himself of its subject-matter.

In determining the intent of the parties to a contract—the primary rule of construction—the instrument is to be considered as a whole, each clause and word being read in connection with the remaining provisions and in the light of the situation of the parties at the time of its execution and of their own practical, contemporaneous interpretation of its language.

The construction of a provision in a contract as a condition precedent will be avoided where it would result in injustice and where the contract affords evidence of a contrary intent.

The right to demand performance of a condition precedent may

be waived, either expressly or by implication from conduct evidencing such an intent.

In the present case, the defendant S, a member of a partnership, accepted and signed two writings addressed to his firm by the plaintiffs under date of April 14th, 1920, each of which recited in substantially similar terms that "we have this day sold to you four hundred tons of white Java sugar . . . at twenty cents per pound. . . . Buyers to open a credit with an approved bank to be confirmed immediately at buyers' expense for an amount sufficient to cover the invoice price of the shipment." Thereafter and prior to September 9th, when the partnership repudiated these agreements without having at any time furnished such a letter of credit as was required by their terms, S transferred his real and personal property to his son. On October 11th, the plaintiffs sued the partnership in the Superior Court for breach of contract and obtained a judgment which was affirmed by this court upon appeal; and having, at the commencement of that suit, attached this property as belonging to S, and having, after judgment, filed a lien upon the real estate, they brought the present action to foreclose the lien and to set aside the transfers as fraudulent. The defendants claimed that, at the time of the transfer, neither the partnership nor S owed any "debt or duty" to the plaintiffs within the meaning of § 6132 of the General Statutes, because, construing the credit requirements in the writings of April 14th as conditions precedent, those writings had not matured into contracts conferring mutual rights and duties, in view of the fact that the conditions had never been performed. The trial court overruled this claim; found that, by accepting the letters of April 14th, the partnership had thereupon "entered into written agreements" and had "become obligated to pay the plaintiffs" the purchase price of the sugar; and rendered judgment for the plaintiffs. *Held:*

1. That the trial court's finding as to the existence of a "debt or duty" on the date of the transfers was a conclusion which was legally and logically supported by the subordinate facts.

2. That the provisions concerning the letters of credit, read in connection with the remaining terms and in the light of the situation of the parties in dealing upon a high and rapidly advancing sugar market, were properly construed by the trial court as independent promises by the partnership as distinguished from conditions precedent.

3. That even if they were to be construed as conditions precedent, the plaintiffs had by express communications to the partnership and by their conduct in accepting and retaining a letter of credit for an amount less than that fixed in the contracts, waived the right to demand performance.

4. That the subordinate facts amply justified the trial court's con-clusion that the transfers were fraudulent, made without con-sideration upon a falling sugar market and for the purpose of preventing a recovery by the plaintiffs of damages under the contracts.

Argued October 29th—decided December 23d, 1925.

ACTION to set aside certain alleged fraudulent con-veyances of real estate and to foreclose a judgment lien, brought to the Superior Court in New Haven County and tried to the court, *Wolfe, J.;* judgment for the plaintiffs, and appeal by the defendant Max Swirsky. *No error.*

*Benjamin Slade,* for the appellant (defendant Max Swirsky).

*Frederick H. Wiggin* and *David L. Daggett,* for the appellees (plaintiffs).

HAINES, J.   An action was brought October 11th, 1920, against Isaac Swirsky and Yonas Swirsky, his son, copartners doing business in New Haven under the firm name of I. Swirsky & Son, and certain real estate attached therein as the property of Isaac, and certain personal property consisting of a stock of goods in the store of I. Swirsky & Son, was also attached. A judgment was rendered June 2d, 1922, for $237,-735.30 and costs, and affirmed on appeal.   Execution was returned unsatisfied, and on June 2d, 1923, the plaintiffs filed a judgment lien against the real estate, which this action seeks to foreclose.   On July 6th, 1920, the defendant Isaac transferred by quitclaim deed to another son, Max Swirsky, appellant, and one of the defendants herein, all his interest in some of the real estate, but the deed was not recorded until August 20th, 1920.   On the same day he also transferred to him, a bank deposit of about $25,000, and in addition

gave him a mortgage on the remainder of his real estate, for $45,000, and on August 19th, 1920, gave him a bill of sale of all his interest in the stock of goods in the store with the credits, good-will and fixtures. On the same day, Max returned to Isaac a power of attorney, giving him full power and authority to manage the business of the store as well as the real estate which had been transferred to Max, and in general, to do, all things and to act in all matters in relation to the property, "as fully and effectually in all respects as the said Max Swirsky could do if personally present." The transfer of the real estate was therefore made about three months before the attachment and the transfers of all the properties were complete more than seven weeks before the attachment was made. By these transfers Isaac Swirsky sought to divest himself of all his property.

It is the claim of the plaintiffs in this action, that these transfers were fraudulent, designed and made with the intent to hinder, delay and defraud the plaintiffs in the collection of their claim against Isaac and Yonas Swirsky, and they ask that they be so declared in this action, and that the defendants be required to reconvey the properties and cancel the original assignments. The trial court sustained the claims of the plaintiffs, and Max Swirsky alone appeals from that judgment, and it is his appeal only which is now before us.

The debt claimed by the plaintiffs to be due them from the defendants Isaac and Yonas, and for which judgment was rendered, was based upon two certain writings, appearing in the record as Exhibits I and J, which read as follows:

Exhibit I.

April 14, 1920.

Messrs. I. Swirsky & Son,
  New Haven, Conn.

We have this day sold to you FOUR HUNDRED TONS (400) WHITE JAVA SUGAR, crop 1920/21, at 20¢ per pound duty paid, cost, freight and insurance from Java, including war risk, to New York, for shipment per steamer and/ or steamers during July and/ or August next at sellers' option. Packed in single bags of about two cwt. net each. The sugar to be invoiced at Java shipping weights, the picul being calculated at 136 lbs. English. Buyers to open a credit with an approved bank or banker to be confirmed immediately at buyers' expense, for an amount sufficient to cover the invoice price of the shipment, together with disbursements and/ or advances as per Charter Party, and the sellers and/ or their agents are to draw under the credit in three (3) months' sight drafts, with the relative documents attached, viz. Bills of Lading, Certificate of Origin, Abstract of Invoice, Specification of weights and tares, if possible, and in the last instance, Charter Party, for the due payment of which drafts upon maturity, buyers to remain responsible to drawers. Should delivery be prevented or delayed by war, rebellion, insurrection, political disturbances, civil commotion, strikes, or volcanic eruptions in the Island of Java, sellers shall advise buyers of same by cablegram, and the latter shall have the option of cancelling the contract for the quantity so prevented or delayed, or of taking the sugar at contract price as soon as it can be delivered. This option to be declared to sellers' representatives in London within five working days of receipt of sellers' cablegram. Any dispute arising out

of this contract to be settled by arbitration by London brokers in the usual manner, and this submission may be made a rule of the High Court of Justice, or any division thereof.

ACCEPTED

      Buyer
Isaac Swirsky & Son        G. H. Finlay & Co.
  By Isaac Swirsky            F. J. Frum.

Exhibit J.

Messrs. I. Swirsky & Son
     New Haven, Conn.

We have this day sold you FOUR HUNDRED (400) TONS White Java Sugar, crop 1920, at TWENTY (20¢) cents, per pound, duty paid, cost, freight and insurance from Java, including war risk, to New York, for shipment per steamer or steamers during August and/or September next at sellers' option. Packed in single bags of about 2 cwt. net each. The sugar to be invoiced at Java shipping weights, the picul being calculated at 136 lbs. English. Terms: Irrevocable credit to be opened by buyer in favor of G. H. Finlay & Co., on an approved New York Bank immediately; payment to be made against presentation of delivery order here. Should delivery be prevented or delayed by war, rebellion, insurrection, political disturbances, civil commotion, strikes, or volcanic eruptions in the Island of Java, sellers shall advise buyers of same by wire and the latter shall have the option of cancelling the contract for the quantity so prevented or delayed, or of taking the sugar at contract price as soon as it can be delivered. This option to be declared to sellers' representative within five working days of receipt of

sellers' advice. Any dispute arising out of this contract to be settled by arbitration.

Buyer
I. Swirsky & Son

G. H. Finlay & Co.
F. J. Krum.

As the appellant correctly says in his brief, this action rests upon the question "whether the defendants Isaac and Yonas Swirsky, on July 6, 1920, owed the plaintiffs either debt or duty within the meaning of Section 6132 of the General Statutes of this State." The trial court held that they did and rendered a judgment accordingly. As the appellant further says: "The result of this appeal must depend upon the correction of the finding in the particulars asked for in the grounds of appeal," for on the finding as made, the judgment was clearly justified.

By obtaining changes in the finding, the appellant seeks to secure a state of facts which, if established, would not sustain the judgment rendered by the trial court.

Of the forty reasons of appeal, the 17th, 18th and 19th challenge the clauses, "entered into a written agreement (Exhibit I)," "entered into a written agreement (Exhibit J)," and "by these contracts, became obligated to pay plaintiffs a sum of money amounting to about $358,400," and ask that they be stricken out. The appellant says "the undisputed evidence" requires a different finding; that these writings were not contracts and did not create an obligation to pay as stated. Though appearing in the finding as facts these are essentially legal conclusions, and it is immaterial that they are not so designated.

Appellant seeks by the 23d, 24th and 25th paragraphs of his appeal to have certain paragraphs of his

draft-finding substituted for those above referred to, and the sum total of his claims is that these writings, Exhibits I and J, were mere offers by I. Swirsky & Son to buy the sugar referred to, and never became binding contracts because the offers were never accepted by the plaintiffs and because they rested upon the condition precedent, that I. Swirsky & Son should comply with the provisions regarding a credit with approved banks, which condition was never met by the latter. The question is whether the trial court could have legally reached the conclusion expressed by that part of the finding to which the appellant now objects, and this is to be determined from an examination of the subordinate facts.

Defendant-appellant's attack upon the existence of these contracts is for their want of consideration and for want of mutuality of agreement and obligation as to these defendants. That there were proper parties competent to contract is evident; so too there was a proper subject-matter. A consideration has been defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. *Cook* v. *Bradley,* 7 Conn. 57, 62; *Lewis* v. *Phœnix Mut. Life Ins. Co.,* 39 Conn. 100, 106. And so it has been said that every sufficient consideration, although not technically an estoppel, contains the substantial elements of an estoppel *in pais,* for if a man by his promise induces another to change his situation and is then permitted to deny the validity of the promise, he is thus perpetrating a fraud, and injuring another by a false promise. The law will not permit this but will hold him to the fulfillment of his undertaking. *Rice* v. *Almy,* 32 Conn. 297, 304.

There is a sufficiently obvious consideration in the two writings in question to sustain a contract obligation for both parties. Each party promises to do

certain things and these promises are made because of and in consideration of the promises of the other party. A promise is a declaration by any person of his intention to do or to forbear from anything at the request or for the use of another. A proposal, when accepted, becomes a promise. Pollock on Contracts (9th Ed.) pp. 1, 6.

Following a conference, the writings were presented by the plaintiffs to the defendants Swirsky & Son and were a proposal to sell the latter certain sugar on stated terms, and these were accepted in writing by the latter. This shows they were of the same mind and intention concerning this sugar, and they assented to the same thing in the same sense—their minds obviously meeting as to all the details expressed in the writings. *Ross* v. *Savage,* 66 Fla. 106, 63 So. 148; *Hartford & N. H. R. Co.* v. *Jackson,* 24 Conn. 514; *Burchard-Hulburt Investment Co.* v. *Hanson,* 143 Ill. .App. 97; *Lord & Hewlett* v. *United States,* 217 U. S. 340, 30 Sup. Ct. 568; *Stroock Plush Co.* v. *New England Cotton Yarn Co.,* 213 Mass. 354, 359, 100 N. E. 617; *Sibley* v. *Felton,* 156 Mass. 273, 277, 31 N. E. 10.

Since every agreement, as the term is used in the law of contract, springs from an offer and the acceptance thereof by the party to whom it is made, we clearly have in these writings a complete mutuality of agreement, and the terms thereupon became binding upon both parties. *Potts* v. *Whitehead,* 23 N. J. Eq. 512; *Strong* v. *Catlin,* 35 Ala. 607; *Drew* v. *Edmunds,* 60 Vt. 401, 407, 15 Atl. 100; *Stagg* v. *Compton,* 81 Ind. 171.

The writings in question are well described in *Watkins* v. *Rymill,* L. R. 10 Q. B. Div. 178, 188: "A great number of contracts are in the present state of society made by the delivery by one of the contracting parties to the other of a document in a common form, stating

the terms by which the person delivering it will enter into the proposed contract. Such a form constitutes the offer of the party who tenders it. If the form is accepted without objection by the person to whom it is tendered this person is as a general rule bound by its contents, and his act amounts to an acceptance of the offer made to him, whether he reads the document or otherwise informs himself of its contents or not."

Lastly, as to the mutuality of obligation. It will be observed that both these writings begin in the present tense, "We have this day sold you," and to this declaration Swirsky & Son assent in writing; then follows a description of the subject-matter of the sale, the sugar, the amount of it and the price, and the details of the shipping, packing and invoicing, etc., to all of which Swirsky & Son assent by their signature. It constitutes in effect an agreed statement of a then-existing situation, and the law places on each party at once certain mutual obligations, by reason of that situation, such as delivery by one and payment by the other. In addition, but strictly as incidental to the main agreement, are certain other details which the parties assume respectively to carry out. Of these are the obligation of the seller to permit the buyer to adopt one of two stated courses in the event of interference with the main undertaking by war, etc., and the obligation of the buyer to establish a credit to insure the payment of the amount due from him under the main contract. In all this is clearly to be seen that mutuality of obligation which is required of a contract, and the obligations are as clear and certain as the law requires. *National Electric Signaling Co.* v. *Fessenden,* 207 Fed. 915; *Jones* v. *Vance Shoe Co.,* 115 Fed. 707; *Marble* v. *Standard Oil Co.,* 169 Mass. 553, 48 N. E. 783; *Ewins* v. *Gordon,* 49 N. H. 444; *Spear* v. *Orendorf,* 26 Md. 37.

While we thus see that these writings display all the elements of a valid contract, we also recognize that they must be read in the light of the situation which the parties occupied at the time, and from such reading the intent of the parties—the primary rule of construction—is to be deduced. *Leonard* v. *Dyer,* 26 Conn. 172, 175; *Brown* v. *Bishop,* 105 Me. 272, 74 Atl. 724; *Goldstein* v. *D'Arcy,* 201 Mass. 312, 87 N. E. 584; *Baker* v. *Baird,* 79 Mich. 255, 44 N. W. 604; *Conway Co.* v. *City of Chicago,* 274 Ill. 369, 113 N. E. 703.

So reading these writings in the light of the situation of the parties disclosed by the finding, we see no reason to doubt but that the intent is clear from the language used, with the possible exception of the provisions regarding the credit to be established by the buyer.

The defendant-appellant contends, as the request for changes in the finding shows: that in assuming the obligation to establish this credit, it was intended by both parties ·that this should be done before any other obligation was incurred by either party under the other provisions of the writing, while the plaintiffs say it was merely intended as one of the several things which Swirsky & Son were to do and was strictly incidental and independent of any provision of the main contract.

In determining the intent of the parties as to whether this credit should be a condition precedent, the paper must be considered as a whole, all clauses and words considered in connection with the rest of its provisions and, if possible, each given its proper meaning and the situation of the parties noted. *Jewel Tea Co.* v. *Watkins,* 26 Colo. App. 494, 145 Pac. 719; *Eastern Bridge & Structural Co.* v. *Curtis Bldg. Co.,* 89 Conn. 571, 575, 94 Atl. 921; *Metcalf* v. *Taylor,* 36

Me. 28; *Richardson* v. *Palmer,* 38 N. H. 212; *Perkins* v. *Kirby,* 35 R. I. 84, 85 Atl. 648; *McLean* v. *Windham Light & Power Co.,* 85 Vt. 167, 81 Atl. 613; *Jorgensen* v. *Tuolumne County,* 205 Fed. 612; *Unita Tunnel, M. & T. Co.* v. *Ajax Gold Mining Co.,* 141 Fed. 563; *Skowhegan Water Co.* v. *Skowhegan Village Corporation,* 102 Me. 323, 66 Atl. 714.

Very important and often controlling, is the practical contemporaneous construction which the parties have themselves put on the language in question. *Lowrey* v. *Hawaii,* 206 U. S. 206, 27 Sup. Ct. 622; *Case Mfg. Co.* v. *Soxman,* 138 U. S. 431, 437, 11 Sup. Ct. 360; *Union Pacific Ry.* v. *Anderson,* 11 Colo. 293, 18 Pac. 24; *Elting* v. *Sturtevant,* 41 Conn. 176, 181; *French* v. *Pearce,* 8 Conn. 439, 442.

In the light of these rules of construction, we examine these writings. In the first place, it is to be noted that if this provision for a credit was intended as a condition precedent to the assumption of any other liability of the parties, it would have been natural to say so, and this was not done.

Courts are disinclined to construe stipulations as conditions precedent where to do so would result in injustice; *Freet* v. *American Electrical Supply Co.,* 152 Ill. App. 205; *Hunt* v. *Tibbetts,* 70 Me. 221; *Tipton* v. *Feitner,* 20 N. Y. 423; and where the court can see from the contract that it was the intent of the parties that the performance on the one side was not to be conditioned on the performance on the other, the promises will be construed as independent. *Crawford* v. *Weston,* 131 Mass. 283.

In view of the circumstances disclosed by the finding, we should also remember that the party who is entitled to demand the performance of a condition precedent, also has power to waive performance, and this may be shown by express waiver or by acts evi-

dencing that intention. *California Raisin Growers
Asso.* v. *Abbott,* 160 Cal. 601, 117 Pac. 767; *Stover* v.
*Flack,* 30 N. Y. 64; *Griggs* v. *Moors,* 168 Mass. 354, 47
N. E. 128; *Sherwin* v. *Rutland & B. R. Co.,* 24 Vt. 347.

As already suggested, the opening clause of each
contract is an explicit statement, capable of but one
reasonable construction, viz.: that upon the signing
of the same the sale of the sugar was complete, and
there can be no fair question but that this was the
understanding and intent which both then had, and
that anything required to be done by the later pro-
visions of the paper was to be done in recognition of
the specific fact, that Swirsky & Son had actually
bought the sugar. There is nothing in the remainder
of the contract inconsistent with that. The situation
of the parties lends strong color to this view also.
Swirsky & Son desired this sugar, and on that date
"the sugar market was firm—prices were high and
rapidly advancing, and sugar was in great demand,"
and the plaintiffs were in a position to sell the sugar
at the price stated. It would not be reasonable to
suppose that either party was willing to leave the
matter in abeyance till a credit could be established,
as neither would thus be willing to risk a sudden turn
of prices in the sugar market. On the contrary, the
provision for a credit was, it may be more reasonably
assumed, simply a measure of financial assurance
which the plaintiffs desired because. of the large
amount of money which Swirsky & Son had that day
become obligated to pay them. Having bought the
sugar, Swirsky & Son further agreed that they would
take this means of protecting the plaintiffs against
the possible failure of payment. Later in the month,
it appears, Swirsky & Son in pursuance of their agree-
ment did furnish a part of the credit in the shape of a
letter of credit for $150,000. Although not in form

satisfactory to the plaintiffs, the latter retained and held it. The provision that the credit be provided "immediately" was obviously not complied with by Swirsky & Son, but it is equally obvious that the plaintiffs waived that specific requirement of immediate performance, and clearly indicated that waiver by communication to Swirsky & Son from time to time thereafter. This the plaintiffs had the undoubted right to do, whether we treat the provision in the writing as a precedent or an independent provision.

This situation continued till September 9th of that year, when Isaac Swirsky, having disposed of all his property, Swirsky & Son repudiated the agreement entirely and sent a letter to the bank which had issued the $150,000 letter of credit ordering the bank to make no payments to the plaintiffs upon it.

The position of the defendant-appellant here then is, in effect, that he claims these written agreements were voided and that Swirsky & Son were freed from any obligation thereunder by the failure and refusal of the Swirskys themselves to perform their agreement. In other words, if Swirsky & Son had kept their agreement and furnished the credit, they would have been obliged to take and pay for the sugar, but having failed and refused to keep that agreement, they are absolved from all liability to take and pay for the sugar, and this is the *reductio ad absurdum* to which the appellant's contention brings him.

The conclusion of the trial court therefore that the defendants Swirsky & Son when they signed these papers, Exhibits I and J, entered into contracts, is legally justified.

The requests for changes in the finding which we have so far considered are denied. As the finding thus stands, Isaac and Yonas Swirsky, at the time of the transfer by Isaac to Max of all the property of the

former, were under a debt or duty to these plaintiffs, within the meaning of General Statutes, § 6132.

We have discussed three of the six requests to strike out portions of the finding. The first two of the remaining three refer to. paragraphs twenty-one and twenty-two of the finding. These, in substance, allege that on, before and at all times since April 14th, 1920, the defendant Isaac Swirsky owned and at the present time owns in fee simple the whole or a part of five certain pieces of real estate therein described. We are asked to strike out the words "at the present time," on the ground that the conclusion is "contrary to and not warranted by the evidence."

The last of the six requests is that paragraph forty-one of the finding be stricken out. That paragraph states, in substance, that at none of the times claimed by the defendants, did the appellant Max pay Isaac or Yonas the $25,000 claimed or any part of it, nor did Isaac at any such time owe Max the further sum of $20,000 or any part of it. Appellant asks that this be stricken out "because the facts therein alleged are contrary to and not supported by the evidence."

The reasons alleged in the motions obviously contemplate an examination by us of the transcript of evidence to determine whether these findings to which appellant objects are supported or warranted by the weight of the evidence. We have had frequent occasion in the past to point out that we are not authorized to change subordinate facts in a finding because found against the weight of the evidence. We have no jurisdiction in this regard.

"It is well to emphasize the fact that no statute or rule of court can permit a change of the subordinate facts found because found against the weight of the evidence, or because the trial court failed to give credit to certain testimony. Errors claimed to have been

made by a trial court in finding facts against the weight of the evidence, or because it failed to give credit to the testimony of certain witnesses, or in making its finding of a fact by ascertaining the fact wrongly from conflicting testimony or incongruous evidential facts, are not reviewable." *Dexter Yarn Co.* v. *American Fabrics Co.*, 102 Conn. 529, 540, 129 Atl. 527; *Styles* v. *Tyler*, 64 Conn. 432 to 461, 30 Atl. 165; *Atwater* v. *Morning News Co.*, 67 Conn. 504, 525, 34 Atl. 865; *Nolan* v. *New York. N. H. & H. R. Co.*, 70 Conn. 159, 176, 39 Atl. 115.

There are but three grounds under our rules upon which to base written exceptions to a finding before this court, viz.: a refusal to find a material fact which was an admitted or undisputed fact; a finding in doubtful language, the significance of which does not clearly appear; and a finding of a material fact without evidence to support it. Practice Book, Rules of Supreme Court, p. 309, § 11; *DeFeo* v. *Hindinger,* 98 Conn. 578, 580, 120 Atl. 314; *Dexter Yarn Co.* v. *American Fabrics Co.*, 102 Conn. 529, 542, 129 Atl. 527.

We do not fail to notice that the appellant in his brief departs from the ground upon which these exceptions were taken and makes the claim that as the plaintiffs offered the evidence of the Swirskys in a previous trial and of Isaac in person on this trial, the trial court "was bound to accept and be governed by" their statements upon these points, and if that court refused to believe these defendants then there was no evidence in the case of the facts found.

This cannot be held to cure the defect in the exceptions taken on appeal. Even if we could so treat it, the position taken by the appellant in his brief is unsound. The court is not bound to believe these witnesses. Their credibility was for the trial court and for that court alone to determine. Nor does it

appear that there was no evidence in the case from which the court could reasonably and legally reach these conclusions. These requests for change of the finding cannot be granted.

In none of the reasons of appeal for failure of the court to add requested paragraphs, nor in the exceptions upon which they are based, do we find the grounds stated as the rules require. True, it is suggested that the facts claimed are material, but that is not a sufficient ground for granting the request. It is necessary that it should also appear that they are admitted or undisputed facts, and this should be alleged. If they are not admitted or are disputed, it was the exclusive province of the trial court to decide whether they were established, and no appeal lies to this court from such decision. Practice Book, p. 309, § 11; *DeFeo* v. *Hindinger,* 98 Conn. 578, 581, 120 Atl. 314.

We may add that an examination of the several claims does not disclose to us that any of the desired additions are material and at the same time admitted or undisputed. The failure, in any event, to allege grounds within the rule, leaves no basis for correction by this court.

We are now brought to a consideration of the 13th, 14th and 15th reasons of appeal. It is claimed it was error for the trial court to hold that the conveyance of his property by Isaac to his son Max was fraudulent and without consideration, and that the bill of sale of the personal property and the mortgage of $45,000 were also fraudulent.

These are brief conclusions, but they are elaborated in the memorandum of decision, which is made part of the finding, and to which no exception is taken of record.

We do not deem it necessary to review at length the

facts which underlie these conclusions reached by the trial court. They are not only too numerous, but too glaring, to warrant detailed consideration, and it is obvious to us that the trial court could not have come to any other reasonable conclusion than that Isaac Swirsky, finding himself heavily obligated for a large amount of sugar and on a falling market, arranged with his son Max, for the express purpose of preventing a recovery by the plaintiffs, a transfer to Max without consideration of all the property which Isaac owned. Not only their conduct at the time, but since, and their attitude toward the trial of the case in the lower court, as set forth in the trial court's memorandum of decision and made a part of the finding, confirms and emphasizes the fraudulent character of their whole transaction. The conclusions we have reached render it unnecessary to consider any of the remaining reasons of appeal.

There is no error.

In this opinion the other judges concurred.