[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO ENFORCE SETTLEMENT AGREEMENT (No. 117)
In Audubon Parking Associates Limited Partnership v. Barclay Stubbs, Inc., 225 Conn. 804, 626 A.2d 729 (1993), our Supreme Court held that, "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." Id. at 811. CT Page 3058 The motion now before the Court invokes the rule of Audubon Parking and asks the Court to enforce a settlement agreement between the parties. The facts are not in dispute. For the reasons briefly set forth below, the motion must be granted.
The plaintiff, Liberty Mutual Insurance Co. ("Liberty") commenced this action against the defendant, White Oak Corp. ("White Oak"), in 1997. Liberty alleges in its amended complaint that it issued workers' compensation and general liability insurance policies to White Oak and that White Oak owes it premiums in the amount of $240,350. White Oak has filed special defenses claiming that Liberty's billings were erroneous and that the statute of limitations has expired. Both Liberty and White Oak have been represented by counsel at all relevant times.
The pleadings were closed on August 12, 1998. On December 30, 1998, White Oak filed a request for continuance. The request states that the matter was scheduled to be tried to the Court on January 29, 1999, but that the parties had agreed that the matter would be heard by an arbitrator in February 1999. The Court did not act upon the motion, but the file reflects no further judicial action. On January 13, 2000, Liberty filed the motion to enforce settlement agreement now before the Court. The motion was heard on March 20, 2000.
At the hearing, the parties submitted affidavits and other documents in support of their respective positions. Each party declined an opportunity to present additional evidence. The parties made it clear that they do not disagree on the facts. The issue that divides them is one of law.
The materials submitted by the parties establish that an arbitration hearing was scheduled for December 15, 1999, but the parties agreed to settle the matter before arbitration. Settlement discussions occurred between December 10 and December 13, 1999. The parties ultimately agreed to a settlement, and Liberty notified the arbitrator that the parties had settled and that the hearing should be canceled.
Liberty's counsel drafted a written Settlement Agreement and Release, which set forth all the recitations and terms agreed to by the parties. The Agreement states that White Oak, "as a compromise settlement," agrees to pay the sum of $200,000 as "satisfaction of the outstanding premium balance and any balances that would occur due to future retrospective premium adjustments CT Page 3059 of the Policies in the future." Paragraph 12 of the Agreement turns out to be the cynosure of the case. That paragraph states that:
 12. WHITE OAK shall pay to LIBERTY MUTUAL the sum of Twenty-Thousand ($20,000) Dollars contemporaneous with the execution of this Agreement, with payment to be made by way of White Oak's check drawn on good funds. The remainder shall be paid monthly over nine months, commencing on January 15, 2000 with final payment to be made on September 15, 2000. Said payments shall be made on or before the fifteenth day of each month, but in any event not later than the 25th day of the month.
In ¶ 13 of the Agreement, White Oak agrees to stipulate to a judgment in favor of Liberty in the amount of $200,000, and Liberty agrees to forbear executing on that judgment so long as White Oak makes the payments recited in ¶ 12. Paragraph 14 provides that, "Any future defaults in payments by WHITE OAK shall constitute a breach of this Agreement."
On December 22, 1999, Liberty's counsel sent an e-mail copy of the Agreement to White Oak's counsel. An accompanying letter, sent by both e-mail and regular mail, states the following:
 Attached please find an e-mail copy of the Settlement Agreement and Release in the above referenced matter. I have made the changes in the Agreement as we discussed.
 Please download it and have it executed by your client. I am also sending a copy to Joan DeVittori for her to execute. As soon as the executed copy is received, I will forward it to you.
 Please have your client's check in the amount of $20,000, evidencing the first payment of the settlement as noted in paragraph 12 of the Agreement, sent directly to Joan DeVittori, via overnight mail, at the following address:
 Liberty Mutual Insurance Company 100 Liberty Way Dover, N.H. 03821-1525
 The check should be made payable to Liberty Mutual Insurance Company. It must be received by Wednesday. December 29. 1999.CT Page 3060 You will recall I stated receipt of funds in 1999 was and is a condition of settlement.
(Emphasis in original.)
On December 29, 1999, White Oak's counsel sent Liberty's counsel the following letter:
 I received the signed copy of the Settlement Agreement and Release from White Oak Corporation yesterday and was informed by White Oak Corporation that the check is being sent out by Federal Express to New Hampshire.
On December 30, 1999, Liberty's counsel received the letter just quoted. At about this time, White Oak's bonding company, AIG Insurance, informed White Oak that it would not make payments under the Agreement. According to an affidavit submitted by White Oak's counsel, MG "vetoed the settlement subsequent to both parties agreeing to the settlement."
On December 30, 1999, White Oak informed its counsel of AIG's decision. That afternoon, White Oak's counsel left Liberty's counsel a voicemail message stating that MG had vetoed the settlement and that White Oak would not honor the Agreement. No payment under the Agreement has ever been made.
During the course of negotiations leading up to the settlement, White Oak never informed Liberty that MG had veto power over any settlement. White Oak's own attorney was himself unaware of MG's role until December 30, 1999.
White Oak argues that the requirement of ¶ 12 of the Agreement that it pay Liberty $20,000 "contemporaneous with the execution of this Agreement" was "a precondition of the agreement." It further argues that, "Since payment of the twenty thousand dollars prior to the close of business on December 29, 1999, was a condition of settlement, and since it was not complied with, there is no settlement to enforce." The flaw in this argument is that it confuses a condition to Liberty's performance under the Agreement with a condition to White Oak's performance.
Liberty's letter of December 22, 1999, states that the "receipt of funds in 1999" is a condition of settlement. Under these circumstances, White Oak's nonpayment of the initial $20,000 might indeed be an event that Liberty could assert to be the CT Page 3061 violation of an essential condition for Liberty's performance of the Agreement. Liberty, however, has chosen to waive this condition. White Oak cannot seize upon its own nonperformance to avoid its contractual responsibilities.
It is useful to compare two notable judicial precedents in this regard. The classic case of a condition precedent is Pym v.Campbell, 119 E.R. 903 (Q.B. 1856). Pym was the inventor of a machine. The defendants had allegedly agreed to purchase a share of its profits. The evidence showed that the defendants had actually agreed that they would make the purchase if their engineer, Abernethie, approved of the invention. Abernethie did not give his approval. Under these circumstances, it was held that there was no agreement.
Pym suggests that, in the present case, had the prior approval of MG been made a condition of the Settlement Agreement in question, White Oak would have been entitled to repudiate the Agreement upon receipt of MG's disapproval. The evidence makes it clear, however, that no such condition was agreed upon by the parties. As mentioned, White Oak's own attorney did not know of MG's role until after White Oak had executed the Agreement.
Compare Pym with Finlay v. Swirsky, 103 Conn. 624, 131 A. 420
(1925). Finlay sold Swirsky 400 tons of sugar to be shipped to New York from Java. Finlay sent Swirsky a letter stating the terms of the contract. One term was: "Irrevocable credit to be opened by buyer in favor of G.H. Finlay Co., on an approved New York Bank immediately." Swirsky did not comply with this requirement and sought to repudiate the agreement. The Supreme Court held that Swirsky was not entitled to do so. It stated that, "Courts are disinclined to construe stipulations as conditions precedent where to do so would result in an injustice." Id. at 635. The Court explained the effect of Swirsky's noncompliance with the contract's immediate credit provision in the following helpful language:
 The provision that the credit be provided "immediately" was obviously not complied with by Swirsky Son, but it is equally obvious that the plaintiffs waived that specific requirement of immediate performance, and clearly indicated that waiver by communication to Swirsky Son from time to time thereafter. This the plaintiffs had the undoubted right to do, whether we treat the provision in the writing as a precedent or an independent provision.
. . . .
 The position of the defendant-appellant here then is, in effect, that he claims these written agreements were voided and that Swirsky Son were freed from any obligation thereunder by the failure and refusal of the Swirskys themselves to perform their agreement. In other words, if Swirsky Son had kept their agreement and furnished the credit, they would have been obliged to take and pay for the sugar, but having failed and refused to keep that agreement, they are absolved from all liability to take and pay for the sugar, and this is the reductio ad absurdum to which the appellant's contention brings him.
 The conclusion of the trial court therefore that the defendants Swirsky Son when they signed these papers . . . entered into contracts, is legally justified.
Id. at 637.
Finlay is dispositive of this case. It may be that Liberty
could assert that White Oak's nonpayment of the initial $20,000 was the nonperformance of a condition sufficient to void the contract. Liberty, however, has done no such thing. It is as obvious here as in Finlay that the plaintiff has waived any specific requirement of immediate performance. Under these circumstances, for White Oak to assert that its own nonperformance voids its obligations under the contract is truly a reductio ad absurdum. The evidence establishes that White Oak executed the Settlement Agreement in question, and it is bound to perform its obligations under that agreement.
The motion to enforce the Settlement Agreement is granted.
Jon C. Blue Judge of the Superior Court CT Page 3062