217 U.S. 340
 30 S.Ct. 568
 54 L.Ed. 790
 AUSTIN W. LORD and J. Monroe Hewlett, Doing Business under the Firm Name and Style of Lord & Hewlett, Appts.,
v.
UNITED STATES.
 No. 162.
 Argued April 20, 1910.
 Decided May 2, 1910.
 
 The appellants, doing business as architects under the name of Lord & Hewlett, brought this action to recover from the United States the sum of $75,000 as due them on account of certain transactions relating to a public building which the United States proposed to have constructed and used by the Department of Agriculture.
 The court of claims adjudged, upon the facts found, that the plaintiffs had no cause of action against the United States, and dismissed the claimants' petition.
 The material facts are as will be now stated: By the act of March 2d, 1901, chap. 805, Congress appropriated the sum of $5,000, to be immediately available, 'to enable the Secretary of Agriculture to have prepared, under his direction, plans for a fireproof administrative building, to be erected on the grounds of the Department of Agriculture, in the city of Washington, said plans, and such recommendations thereon as the Secretary of Agriculture may deem necessary, to be transmitted to Congress at its next regular session.' 31 Stat. at L. 922, 938.
 Thereafter, the Supervising Architect of the Treasury Department prepared what is described in the record as a 'programme and conditions of a competition for a building for the Department of Agriculture.' That programme was approved by the Secretary of Agriculture. It recited the purpose to obtain designs for the proposed building by competition between ten architects of good professional standing and citizens of the United States, to be designated by a special commission, and consisting of the Secretary of Agriculture, the Supervising Architect of the Treasury, and three named persons not in the service of the government, who should report as to the relative merits of the designs submitted. The programme contained, among other provisions, the following: 'It must be understood, however, that while the ultimate purpose of the competition is the selection of an architect, the act does not provide for a building, but simply for a design to be approved by Congress at the next session; and, therefore, while it is to be supposed that the architect or firm of architects whose design shall be placed first in this competition will receive the commission to carry out the work when the building is authorized, it must be understood that the Secretary of Agriculture has no authority at this time to enter into any contract further than is provided for by this programme. The programme sets forth, approximately, the conditions and location of the building, modifications of which may become necessary. If Congress provides for the erection of the building, the selected architect is then to prepare such design or designs as may, in the judgment of the Supervising Architect of the Treasury, be necessary to meet the conditions finally adopted by him. . . . The three members of this commission, not in government service, shall receive in full compensation for their services, including traveling and subsistence expenses, the sum of two hundred and fifty dollars ($250). . . . A uniform sum of three hundred and fifty dollars ($350) will be paid to each of the competitors invited, with the understanding and agreement that unless otherwise provided for by act of Congress, the architect or architects whose design shall be placed first will be awarded the commission for carrying out the work, at a fee computed on the basis of the schedule of charges adopted by the American Institute of Architects. It must be understood that no claim shall be made upon the United States by any competitor for any fee, percentage, or payment whatever, or for any expense incident to or growing out of his participation in this competition, other than is expressly provided for by the terms mentioned herein.'
 On the 24th of October, 1901, the appellants—who were among the ten architects selected to furnish necessary designs in competition—received notice from the Secretary of Agriculture that their plans for the building were selected by the commission, and they received and accepted the compensation ($350) which had been fixed by the programme of competition as full compensation for this preliminary work. Subsequently, October 28th, 1901, the Secretary of Agriculture notified Congress that the award had been made to the appellants.
 However, the parties, after discussion, concurred in the view that, as the Department proposed a building of increased size and of more expensive materials, the cost would probably amount to $2,500,000, and a bill appropriating that amount was sent to Congress for its consideration and action. But Congress took no action on the general subject of a public building for the Agricultural Department until February 9th, 1903, when, without the knowledge of the Secretary of Agriculture, it passed an act entitled, 'An Act for the Erection of a Building for the Use and Accommodation of the Department of Agriculture.' That act, it may be observed, did not refer to the above act of 1901, or to anything done under it. It yet provided for a commodious fireproof building on the grounds of the Department of Agriculture for the use of that Department and its Bureaus, 'to be constructed in accordance with plans to be procured, based on accurate estimates, providing for the erection of said building, complete in all of its details, as herein described, and within the total cost of not exceeding the sum herein stipulated, and he is hereby authorized, after procuring such plans, and after due advertisement for proposals, to enter into contracts within the limit of cost hereby fixed, and subject to appropriations to be made by Congress, for the erection of said building complete, including heating and ventilating apparatus, elevators, and approaches, and the removal of the present building or buildings of the Department of Agriculture on said grounds. Sec. 2. That the supervision of the construction of said building shall be placed in charge of an officer of the government especially qualified for the duty, to be appointed by the Secretary of Agriculture, subject to the approval of the head of the Department in which such officer is employed, who shall receive for his additional services an increase of 25 per centum of his present salary, such increase to be paid out of the appropriation for the building herein authorized. Sec. 3, That the limit of cost for the construction of said building complete, including heating and ventilating apparatus, elevators, and approaches, and the cost for removal of the present building or buildings of the Department of Agriculture, is hereby fixed at $1,500,000, and no contract shall be entered into or expenditure authorized in excess of said amount.' 32 Stat. at L. 806, chap. 528.
 The sundry civil appropriation act of March 3d, 1903, contained this additional provision: 'To commence the erection of a new building for the Department of Agriculture, authorized by the act approved February ninth, nineteen hundred and three, two hundred and fifty thousand dollars, of which sum one hundred thousand dollars shall be immediately evailable; and the Secretary of Agriculture is hereby authorized to enter into a contract or contracts for the completion of said building within the limit of cost of one million, five hundred thousand dollars, fixed by said act.' 32 Stat. at L. 1139, chap. 1007.
 Shortly after the passage of the act of March 2d, 1901, the Supervising Architect of the Treasury, Taylor, was designated by the Secretary of Agriculture as expert adviser, and an advisory building committee, of which B. T. Galloway was chairman, was also formed. It was found by the court of claims that 'neither Mr. Taylor nor any of the members of this committee had authority to enter into any contract or agreement with the claimants, which arrangement was continued under the act of 1903 until May 4, 1903, when Taylor was superseded as expert adviser to the Secretary of Agriculture by the appointment of Capt. John S. Sewell in his stead.'
 After the passage of the act of February 9th, 1903, negotiations were had with the claimants, in relation to the detail of plans and specifications for the erection of a building provided for in that act. But it is found that at no time prior to May 4th, 1903, when Sewell succeeded Taylor as expert adviser, 'had the claimants and the Secretary of Agriculture or any person or committee appointed by him to act for him, agreed upon or accepted any specific plans or specifications theretofore prepared and submitted by claimants for the erection of said building.' On the contrary, they could not agree, and their relations were terminated by the letter from the advisory committee, addressed to the appellants, under date of April 15th, 1903. Subsequently, negotiations between the parties were resumed, Capt. Sewell representing the Department as expert adviser. The findings state: 'On May 4, 1903, and subsequent thereto, the negotiations between claimants and Captain Sewell, superintendent, as aforesaid, had to do exclusively with the preparation and execution of a written contract providing for their employment as architects for said building. Captain Sewell had prepared and submitted to claimants two forms of contracts wherein claimants' compensation for services as architects for said building was fixed at 3 1/2 per cent of contract price. After much lengthy correspondence, discussing the propriety of such a fee, and likewise the respective duties of the architects and superintendent of construction, provided for by the act of February 9, 1903, claimants declined to accept the terms of the said agreement, at the same time insisting that the compensation provided for in the original programme of the Secretary, to wit, 5 per cent, should obtain; that they were employed under and by virtue of said programme, and subsequent proceedings thereto.'
 The findings further show that on February 16th, 1903, Taylor, who was then expert adviser to the Secretary, had submitted to claimants for their examination and approval a form of contract looking toward their employment as architects for the construction of said building, in which contract the compensation set forth was 5 per cent of the sum expended in the erection of the same. Claimants do not appear to have examined, approved, executed, or returned said contract. What disposition was ever made of it is not shown. Finally, on May 13th, 1903, the Secretary of Agriculture addressed a letter to the claimants, in which he referred to the failure of the claimants to accept the above contracts submitted to them by the Department, and announced his purpose to look elsewhere than to them for assistance.
 Messrs. Charles Fuller, Paul Fuller, and Benjamin F. Tracy for appellants.
 [Argument of Counsel from pages 345-347 intentionally omitted]
 Assistant Attorney General John Q. Thompson and Mr. George M. Anderson for appellee.
 Mr. Justice Harlan delivered the opinion of the court:
 
 
 1
 This statement of the controlling facts is quite sufficient to show that the judgment below was right. We perceive no ground whatever for a judgment against the United States. Nothing done under the act of March 2d, 1901, created any obligation upon the part of the Secretary of Agriculture, as representing the United States, to proceed under the plans made by the appellants for the construction of the building referred to in that act. The 'programme' of competition, devised under that act by the Architect of the Treasury, under the direction of the Secretary, contemplated the payment of $350 to each of the ten competing architects, in full compensation for their services in preparing and submitting designs. That amount was paid to the appellants. And they were expressly informed by the above act that the plans and recommendations of the Secretary were to be transmitted to Congress. Besides, the programme of competition explicitly stated that the act did not provide for a building, but only for disigns to be approved by Congress. The Secretary was without authority under the act of 1901 to make any binding contract for the erection of the proposed building; and Congress, it seems, took no action in reference to the designs prepared by the appellants under that act. Nothing more was done by either side until Congress, by the act of February 9th, 1903, made independent provisions for the erection of a building for the use of the Department of Agriculture, at a cost not exceeding $1,500,000. But no contract was made under that act with the appellants. On the contrary, the minds of the parties never met as to the terms of any contract in execution of the provisions of the act of February 9th, 1903. The appellants declined to accept the contract prepared and submitted by the Department. Clearly, the appellants were not entitled, simply because of the acceptance of their plans, prepared under the act of 1901, to construct the building provided for in the separate, independent act of February 9th, 1903; and as no contract was made with them by the Secretary under the latter act, they have no cause of action against the United States.
 
 
 2
 Judgment affirmed.