PHILIP D. C. BALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40926. Promulgated December 21, 1932.

*Abraham Lowenhaupt, Esq.*, and *Stanley S. Waite, Esq.*, for the petitioner.

*R. P. Hertzog, Esq., P. A. Sebastian, Esq.*, and *John D. Kiley, Esq.*, for the respondent.

OPINION.

LEECH: 1. The first issue is whether in 1925 petitioner realized a profit of $18,000, his one-fifth share of the net proceeds of the sale of 10,000 shares of common stock of the City Ice Company of Kansas City, which had been purchased by a syndicate in 1922, together with 1,370 shares of preferred stock of that company, for a lump consideration of $100,000. Petitioner's one-fifth interest in the syndicate's stockholdings cost him $20,000 in 1922. None of the preferred stock was sold in 1925. In his determination of the disputed deficiency the Commissioner allocated the total cost of the syndicate's stockholdings to the preferred stock and included in petitioner's income the amount of $18,000 as a capital gain.

Sections 202 (a) and 204 (a) of the Revenue Act of 1926 are applicable, and provide that the gain from the sale of property shall be the excess of the amount realized therefrom over the cost of such property. This act does not establish a method for allocating the cost, or other basis for determining gain or loss, to each class of stock so acquired. However, article 39 of Regulations 69 covers the present facts and has been applied by this Board in similar situations. Cf. *Clifford Hemphill*, 25 B. T. A. 1351. The rule so established is that, where two classes of stock are purchased in one block, the total purchase price shall be fairly apportioned between each class of stock for the purpose of determining the portion of the cost attributable to each class of stock, but if that be impracticable no profit shall be realized until the total cost shall have been recovered out of the proceeds of sales. The same principle of determining gain or loss on disposition by apportioning the total cost (or other proper basis) between respective classes of stock or rights acquired has been approved by the courts and this Board. Cf. *Edgar J. Hesslein*, 21 B. T. A. 61; affd., 53 Fed. (2d) 1081; *Glenn H. Curtiss*, 21 B. T. A. 629; affd., 57 Fed. (2d) 847; *Edward Stephen Harkness*, 21 B. T. A. 1068; *Clifford Hemphill, supra; Alexander D. Falck*, 26 B. T. A. 1359.

Although unsatisfactory in many instances, as here, where the introduction of probably available and admissible evidence would have

assisted us materially, the determination of the Commissioner in allocating the entire cost of both classes of stock to the preferred alone is presumptively correct. *Wickwire* v. *Reinecke*, 275 U. S. 101; *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *Alexander D. Falck, supra.*

Petitioner seeks to overcome this presumption by showing the common stock had some value, i. e., cost something when purchased, but that it is impracticable to allocate the cost to the respective stocks when purchased, and, therefore, there can be no gain realized on subsequent sales until the entire original cost of both stocks is recovered. Petitioners are required " to produce the best available evidence of value which the circumstances and nature of the transactions permitted." *Burnet* v. *Houston*, 283 U. S. 223. The evidence in the present record is very limited. The testimony is that the stock in question was closely held from 1922 to 1925 and that the witness did not know of any sales. Such testimony is certainly not conclusive that there were not other sales at the time that the syndicate purchased the stock in 1922 or that the stock of the City Ice Company was not listed on the stock exchange at or about that time. Even if there had been no other sale of the stock in 1922, its market value at that time might be determinable on the basis of the actual or book value of the assets of the corporation. Cf. *Warren C. Cartier*, 11 B. T. A. 900; affd., 37 Fed. (2d) 894; *Estate of Jeremiah Roberts Downing*, 12 B. T. A. 1180; *T. A. Potter*, 14 B. T. A. 784; *S. L. Meyer, Executor*, 23 B. T. A. 1201; *Alexander D. Falck, supra.*

Petitioner offers an unauthenticated balance sheet of the City Ice Company of Kansas City, given to him by the syndicate manager at the time of petitioner's commitment to the transaction, which he believed to be correct, upon the admissibility of which the presiding Member of the Board at the hearing reserved a ruling. This offer is now refused and the tendered so-called balance sheet excluded. Clearly, this unauthenticated purported balance sheet was purely hearsay as to anything contained therein. However, it is offered for the additional purpose of showing upon what petitioner acted when he purchased the stock, and that petitioner intended to pay some part of the lump consideration for the common stock. The contract of purchase may have properly included an allocation of some part of the consideration to the common stock, but this can not be established by such *ex parte* intention not shown to have been a part of the agreement when the purchase was made. The undisclosed intention of the petitioner is incompetent to any issue involving a construction of the contract unless necessarily presumed to have been a part of the contract, a circumstance obviously absent in the record here. *Lord & Hewlett* v. *United States*, 217 U. S. 340; *Farnum* v. *Whitman*, 73 N. E. 473; *Klock Produce Co.* v. *Robertson*, 155 Pac. 1044. The

only other evidence in the record on this question is the bare sale of this common stock for $100,000 some three years after its purchase. Such a sale is too remote to be alone determinative of value when so purchased. *Hemlock Hollow Coal & Coke Co.*, 10 B. T. A. 1176; *Premier Packing Co.*, 12 B. T. A. 637.

The record discloses nothing upon which we can disturb the Commissioner's determination and it is sustained.

2. The second issue is whether petitioner realized; any profit in 1925 upon the sale of 6,364 shares of stock of the Southland Life Insurance Company for the sum of $225,000. This stock had been acquired in the following manner: 3,884 shares having a fair market value of $128,172, were received in 1915 in exchange for 559.4 shares of the Sam Houston Life Insurance Company which cost petitioner $208,700.65 in 1908; 889 shares were purchased between 1916 and 1921 at a cost of $22,580; and 1,591 shares were received as a stock dividend in 1924.

The exchange of 559.4 shares of Sam Houston Life stock for 3,884 shares of Southland Life stock in 1915 was the result of a merger of those two corporations, in which transaction all of the stockholders of the former exchanged their stock for stock, solely, of the latter.

Such merger constituted a reorganization as that term is defined in section 203 (h) (1) (A) of the Revenue Act of 1926 and the exchange was one described in section 203 (b) (2) of that act, that is, stock was exchanged solely for stock in another corporation a party to the reorganization. Cf. *Robert D. Green*, 24 B. T. A. 719; *W. A. Holt*, 23 B. T. A. 804.

The principal question to be determined is the proper *basis* to be used in ascertaining gain or loss. The applicable provision of the Revenue Act of 1926 is section 204 (a) (6). Cf. *W. A. Holt, supra; David B. Gann*, 23 B. T. A. 999; affd., *Gann* v. *Commissioner*, 61 Fed. (2d) 201; certiorari denied, 287 U. S. 650. This section provides:

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(6) If the property was acquired upon an exchange described in subdivision (b) (d) (e) or (f) of section 203, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. \*   \*   \*

It is immaterial that the exchange occurred prior to the effective date of the Revenue Act of 1926, because section 204 (a) (6) expressly provides that, in determining the basis thereunder, there shall

be taken into consideration gains or losses recognized upon the exchange under the law applicable thereto, that is, prior revenue acts. Section 203 is referred to only for the purpose of describing exchanges within the purview of section 204 (a) (6).

Upon the exchange in 1915 petitioner received stock having a fair market value in an amount of $80,528.65 less than the cost of the stock exchanged. That part of the above quoted provision which prescribes that the basis shall be " decreased in the amount of loss * * * that was recognized * * * under the law applicable to the year in which the exchange was made," necessitates reference to the Revenue Act of 1913, which was " the law applicable " in 1915. Section II B of the Revenue Act of 1913 provides " That in computing net income for the purpose of the normal tax there shall be allowed as deductions: * * * fourth, losses actually sustained during the year, incurred in trade * * *."

Was the loss of $80,528.25 sustained upon the exchange in 1915 one " incurred in trade " and thus recognized by the Revenue Act of 1913 as a deductible loss? If so, the Commissioner's computation, as set out in our findings, is correct, for therein the cost basis of the stock exchanged is " decreased in the amount of loss to the taxpayer," as provided in section 204 (a) (6) of the 1926 Act. If not, the taxpayer must prevail. The evidence proves conclusively that petitioner was not engaged in the trade or business of buying and selling or trading in stocks or securities. He was engaged in engineering projects and more particularly the business of building and operating ice and cold-storage and power plants. He never engaged in the insurance business and the purchase of the Sam Houston Life Insurance Company stock was merely an isolated investment. Upon the merger of the Sam Houston Life with the Southland Life in 1915, the exchange of stock in the former for stock in the latter corporation, by petitioner, was merely incidental to that investment and constituted an isolated transaction not " incurred in trade." Cf. *Mente* v. *Eisner*, 266 Fed. 161; *Isabelle H. Bonbright*, 22 B. T. A. 668. Accordingly, the loss of $80,528.25, sustained upon the exchange, was not " recognized * * * under the law applicable to the year in which the exchange was made," within the purview of section 204 (a) (6) of the 1926 Act. Cf. *David B. Gann, supra.* The Commissioner erred in decreasing the cost basis of the stock exchanged by the amount of $80,528.25.

On brief the Commissioner contends that even though petitioner prevailed as to the questions above discussed, he has failed to establish a necessary factor, namely, the March 1, 1913, value of Sam Houston Life stock. The sale occurred after the effective date of the Revenue Act of 1926 and section 204 thereof provides the method

for determining the *basis* to be used in ascertaining gain or loss. We have discussed the application of subdivision (a) (6). Its effect in the instant case is that the result is the same as if petitioner had sold in 1925 the original stock acquired in 1908, and the basis for determining gain or loss would be the cost or March 1, 1913, value, whichever is greater, as provided in subdivision (b) of section 204. Here, it is immaterial that the March 1, 1913, value of the Sam Houston Life stock is not proven, for, if less than cost, the latter is the correct basis, and, if greater than cost, the only result would be an increase in the loss now claimed by petitioner.

Petitioner's gain or loss on the transaction involved in this issue should be computed as follows:

| | |
|---|---|
| Cost of 559.4 shares of Sam Houston Life exchanged for 3,884 shares of Southland Life | $208, 700. 65 |
| Add: | |
| Cost of 889 shares purchased 1916 to 1921 | 22, 580. 00 |
| By stock dividend of 1,591 shares in 1924 | |
| Total cost of 6,364 shares (basis) | 231, 280. 65 |
| Subtract: | |
| Selling price 6,364 shares in 1925 | 225, 000. 00 |
| Capital loss sustained in 1925 | 6, 280. 65 |

3. The third issue is whether petitioner realized in 1926 a taxable profit of $342,635, as determined by the Commissioner, when in that year he received 15,350 shares of common stock of the City Ice & Fuel Company in exchange for 8,223 shares of common stock of the Federal Cold Storage Company and $10 in cash. The latter stock was purchased by petitioner in 1922 at a cost of $41,115 and had a value of $383,740 at the date of exchange. The City Ice & Fuel Company stock received by petitioner had a present value of $383,-750. The transaction involving this exchange was one by which the City Ice & Fuel Company acquired from the stockholders of the Federal Cold Storage Company all of the latter's outstanding common stock in exchange for 19,575 shares of its own common stock and $210,625 in cash. The City Ice & Fuel Company did not acquire any of the outstanding 10,000 shares of nonvoting preferred stock of the Federal Cold Storage Company, which retained its charter and all of its properties and continued to do business as a separate corporation.

Petitioner contends that the profit was not recognized for tax purposes under section 203 (b) (2) of the 1926 Act, since the term "reorganization" as defined in section 203 (h) (1) is broad enough to include the transaction by which the City Ice & Fuel Company acquired all of the voting stock of the Federal Cold Storage Company.

The pertinent provisions of the Revenue Act of 1926 are as follows:

SEC. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

[(b)] (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan or reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(h) (1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) the mere change in identity, form, or place or organization, however effected.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

[SEC. 2.] (b) The terms "includes" and "including" when used in a definition contained in this Act shall not be deemed to exclude other things otherwise within the meaning of the term defined.

Under sections 202 and 204 of the 1926 Act, petitioner realized a gain, amounting to the difference between $41,115, the cost to him of the Federal Cold Storage Company stock plus $10 paid in cash at the time of the exchange, and the amount of $383,750, the fair market value of the City Ice & Fuel Company stock received in exchange. .Section 203 (a) provides that the entire amount of such gain of $342,625 "shall be recognized," that is, taxed, unless the transaction in which the exchange was made was one described in section 203 (b) (2). As to petitioner, there was an exchange of stock for stock except for the payment of $10 merely for the purpose of avoiding the issuance of a fractional part of a share. But the question is, Did the transaction involving such exchange, constitute a reorganization? The above quoted section 203 (h) (1) specifically defines the term "reorganization" in four subdivisions, (A), (B), (C), and (D), each of which includes a different type or method of reorganization. Clearly subdivisions (B), (C), and (D) are not applicable. Subdivision (A) defines one type of reorganization as "a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)." Congress used the words "merger" and "consolidation" in their ordinary, accepted and well known meanings. In the

instant case there was neither a merger nor a consolidation. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 57 Fed. (2d) 188. Petitioner urges that the parenthetical clause does not exclude other acquisitions of stock by a corporation which are otherwise within the ordinary meaning of the word "reorganization," and that the present transaction constituted such an other acquisition. However, the parenthetical clause is not applied directly to the term "reorganization," but only to "merger" or "consolidation," and, for the purpose of the taxing act, enlarges the ordinary meaning of the two latter terms by including instances where one corporation acquires at least a majority of the voting stock and *also* at least a majority of the total number of shares of *all other* classes of stock of another corporation, or substantially all of the properties of another corporation. *Pinellas Ice & Cold Storage Co.* v. *Commissioner, supra; Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d). 937.

In the present controversy, there being neither a merger nor consolidation of the Federal Cold Storage Company and the City Ice & Fuel Company, nor an acquisition by the latter of at least a majority of the former's preferred stock in addition to the common stock acquired, the transaction in which the exchange was made did not constitute a "reorganization" and section 203 (b) (2) is not applicable. We conclude that the entire amount of the petitioner's gain must be recognized and taxed. Cf. *Thomas H. Redington*, 25 B. T. A. 707.

4. The fourth issue is whether petitioner received in 1926 an ordinary dividend in the amount of $46,262.57, representing. the undivided profits of the Mountain Ice Company of Delaware on January 1, 1926, on which date petitioner received that corporation's net current assets in the amount of $95,306.07, pursuant to the terms of the agreement in which he sold all of the capital stock of such corporation to the City Ice & Fuel Co.

Petitioner relies upon paragraphs (a) and (b) of section 201 of the Revenue Act of 1926, which provide in part, (a) that the term "dividend" means any distribution made by a corporation to its stockholders, whether in money or in other property, out of its earnings, or profits accumulated after February 28, 1913, and (b) that every distribution is made out of earnings or profits, to the extent thereof, and from the most recently accumulated earnings or profits. He urges that, as sole stockholder of the Mountain Ice Company of Delaware, he was able to take out the quick assets or cause that company to distribute them to him, and that, under section 201 (a) and (b), this $95,306.07 constituted a dividend to the extent of that company's earnings or profits and was therefore taxable only at surtax rates. Petitioner cites *Rosenbloom Finance Corp.*, 24 B. T. A. 763,

as controlling. In that case the taxpayer sold all of the stock of the Finch Company and the agreement of sale provided that prior to the sale certain assets of the Finch Company should be distributed to the taxpayer, as a stockholder, and such dividend was duly declared and paid by the board of directors of the Finch Company. After the transfer of the stock, the Finch Company continued in business and did not liquidate. The Board held such dividend to be an ordinary dividend, taxable at surtax rates, and not a liquidating dividend taxable at both normal and surtax rates. In that case it was clear from the records of the company that a dividend had been declared and paid to the taxpayer as a stockholder of the Finch Company. The case is not decisive of the issue here involved.

In the instant case the record does not disclose that petitioner actually did take out the quick assets of the Mountain Ice Company of Delaware or cause that company to distribute them to him while its stockholder, nor does it appear that this company declared or paid any ordinary dividend to petitioner as a stockholder prior to the transfer of the stock to the City Ice and Fuel Company. The evidence indicates that, pursuant to petitioner's agreement with the City Ice and Fuel Company, he took over the current assets and liabilities of the Mountain Ice Company of Delaware as part consideration for the latter's stock. Cf. *Charles L. Coughlin*, 15 B. T. A. 515; *William B. Aull, Jr., et al., Executors*, 26 B. T. A. 862. Thus the income realized would be taxable as ordinary income at both normal and surtax rates, because it is not shown that the gain was a capital gain. The record is silent as to anything from which we can make a definite finding that the amount of $95,306.07, or any portion thereof, was received by petitioner as an ordinary dividend, paid by the Mountain Ice Company of Delaware to petitioner as its stockholder. Accordingly, the Commissioner's determination as to this issue must be affirmed.

5. The last issue is whether petitioner realized, in 1926, a capital net gain of $24,930, as determined by the Commissioner, or one of $19,784.40, as contended by him. In that year the petitioner, as a former common stockholder of the Federal Ice Refrigerating Company, received $24,930 upon the final distribution of a trust fund, established out of a portion of the proceeds from the sale of all the outstanding stock in 1922 and held by him as trustee for the stockholders for the purpose of paying the company's liabilities and distributing the balance, if any, to the former common stockholders. The amount of $5,145.60 constituted petitioner's pro rata share of the income realized from the trust fund during the years 1922 to 1925, inclusive, and on which the trustee paid income taxes. His pro rata share of the balance of the consideration for the stock

left in his hands, as trustee, after payment of the Refrigerating Company's liabilities, amounted to $19,784.40. No question has been raised as to the taxability of the latter amount as a capital gain realized in 1926 from the sale of stock in 1922. Petitioner contends that the $5,145.60 did not constitute taxable income when distributed to him by the trustee in 1926.

Sections 219 of the Revenue Acts of 1921, 1924, and 1926, in effect during the life of the trust in question, impose an income tax upon the income received by a trust or estate and provide that the fiduciary shall be responsible for making a return and paying the tax thereon, except that under certain conditions income may be deducted from the gross income of the trust or estate and be included in the income of the beneficiary or distributee. In the instant case the facts do not disclose what the terms of the trust were with regard to the disposition of income derived from the corpus of the trust during the period pending settlement of the liabilities of the Refrigerating Company. However, the facts do disclose what actually transpired. The trustee received the income, accumulated the same, and paid the tax thereon. There is no evidence of record that this tax was not properly paid. No contention is made that income was properly distributable by the trustee and taxable to the former stockholders in each of the years in which it was realized. It has been stipulated that of the amount of $24,930 received by petitioner in 1926 upon final distribution of the trust, $5,145.60 represented his pro rata share of the net income of the trust. Necessarily, we assume that the latter amount was distributed to him as a portion of the accumulated net income of the trust which had theretofore been taxed.

In the case of *Elnora C. Haag*, 19 B. T. A. 982, we said:

\* \* \* The scheme of taxing income under the revenue acts does not contemplate that income of an estate be taxable both to the estate and to the beneficiary in the same year. Furthermore, we think that it was not intended to tax such income to the estate in one year and to the beneficiary in another. The Commissioner has so interpreted the law in Regulations 65, article 344. We are therefore of the opinion that when income received by an estate is properly included in the gross income of the estate under the provisions of the Revenue Act and is not permitted to be deducted from the gross income of the estate and charged to the beneficiary for income tax purposes under the provisions of the Revenue Act, such income may never be included in the gross income of the beneficiary.

Article 344 of Regulations 65 is to the same effect as article 344 of Regulations 69, which provides in part: " Where the tax has been paid on the net income of an estate or trust by the fiduciary, the net income on which the tax is paid is free from tax when distributed to the beneficiaries."

The Commissioner erred in including the amount of $5,145.60 in petitioner's income for the year 1926, either as a capital gain or otherwise.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*